Andrew E. PASCHAL, a minor, by and through his father and next friend, George P. Paschal, Sr., Plaintiffs,

v.

John PERDUE, Central High School, Mrs. Francis Wouters, John Lester, Jack Fitzgerald, Sam Taylor, Ed Raikes, St. Lucie County School Board, Florida High School Activities Association, Inc., a Florida corp., and John Carroll High School, Defendants.

Civ. No. 70–1449.

United States District Court, S. D. Florida, Miami Division.

Dec. 22, 1970.

James A. Weck, Pompano Beach, Fla., for plaintiffs.

John T. Brennan, of Carlton, Brennan & McAliley, Fort Pierce, Fla., for defendant John Carroll High School.

Harry C. Duncan, of Clayton, Duncan, Johnston, Clayton, Quincey, Ireland & Felder, Gainesville, Fla., for defendant Florida High School Activities Assn., Inc.

Errol S. Willes, of Willes, Bittan & Willes, Fort Pierce. Fla., for remaining defendants.

## MEMORANDUM OPINION AND FINAL JUDGMENT

ATKINS, District Judge.

■ Although there is no federal constitutional right to play football, there is

a federally enforceable right under the equal protection clause not to be denied eligibility, by state action, to play football solely because of the color of the player's skin. Title 28 U.S.C. § 1343, more commonly known as the Civil Rights Act of 1964.

Plaintiffs, residents of Fort Pierce, Florida, seek injunctive relief under the Civil Rights Act of 1964 against the St. Lucie County School Board (School Board) and the Florida High School Activities Association (FHSAA) to require execution of a waiver that would permit Andy Paschal to play football this season at John Carroll High School, a school operated under the aegis of the Diocese of Orlando. He transferred to John Carroll after being a first string member of the 1969 varsity football team at Dan McCarty High School. Both schools are in St. Lucie County. The principals of both schools are members of the Association which controls eligibility of team players in athletic contests among member high schools in Florida.

On or about May 1, 1970, Defendant John Perdue was appointed Principal of defendant, Central High School, which was a new high school opened to students in September, 1970. Students at that school consisted primarily of students from Dan McCarty High School and the students of Lincoln Park Academy, a predominantly Negro facility which had been closed as a result of efforts to integrate the St. Lucie County School system. Students formerly attending Dan McCarty High School and Lincoln Park Academy were, if meeting other eligibility requirements, eligible to participate in inter-scholastic activities at the newly created Central High School. It became the only high school operated by the Board. In the Spring of 1970, Andy Paschal's deteriorating academic performance motivated his parents to transfer him to John Carroll High School at the beginning of the 1970–71 school year. It was this transfer and the ensuing ineligibility to play football that brings Plaintiffs before this Court.

This controversy had its origin in May, 1970. During that month a meeting was held between certain officials of the John Carroll High School and the Central High School to discuss the question of eligibility of athletes transferring from one school to the other.[1] Mr. John Perdue, being ill and unable to attend the meeting, was represented by Mr. Robert L. Jefferson, then Assistant Principal of Central High School. John Carroll was represented by its Principal, Sister June Elizabeth. Although the evidence is in conflict as to whether an agreement regarding waivers was reached at this meeting, it is not necessary for this Court to reconcile this conflict in order to resolve the instant issues. Mr. Jefferson testified that he was under the impression that a waiver agreement *had* been reached between the two schools and he so reported to his superior, Perdue. Regardless of whether or not an agreement had, in fact, been

---

1. Article 20, Section 11, Paragraph 2 of Florida High School Activities Association's By-Laws provides as follows: "20–11–2 TRANSFER STUDENT: A student who transfers from a Florida Public School whose principal is a member of this association, to a Florida private school whose principal is a member of this association, or vice-versa, shall be ineligible to represent the new school he is attending until he has been in attendance a full calendar year unless he has completed all grades in the school from which he transfers." The Florida High School Activities Association's published By-Laws contains the following notation under the above quoted article: "NOTE: The Board of Directors and the Executive Committee have ruled that the provisions of Article 20, Section 11, Paragraph 2 as they apply to a transfer student from a public school to a private school or vice-versa may be waived if the benefit of athletic eligibility is requested by the principal of the school from which he transfers and the principal of the school to which he transfers on a form to be furnished by the Executive Secretary."

consummated, the strong arguments made by Central High School representatives in support of the waiver agreement together with the admission by Sister June Elizabeth that she did not, at the meeting, vocalize her objections to said agreement, makes it plainly reasonable for Mr. Jefferson to have left the meeting feeling that an agreement had been concluded.

In May, 1970 Andy was informed that he would be unable to play football for John Carroll High School during the 1970–71 school year inasmuch as Mr. Perdue would not sign the necessary waiver. The message was repeated at a meeting held between Andy, his parents, and Mr. Perdue on August 26, 1970.

Perdue's expressed reason for declining to sign a waiver as to Andy Paschal was the "agreement" with John Carroll. While I find there was not a *formal* agreement, Perdue had reason to believe that an understanding existed between the two schools. Thus, Perdue's reference on several occasions that Paschal's tranfer would precipitate others to do likewise and could result in their being left with an all-black team must be considered in total context. It is then realized that he was not declining to sign the waiver because Andy was white.

Administrative review by the School Board and by FHSAA was had in appropriate proceedings. In none of these was the issue of "race" raised by Paschal. "Hardship" was the criterion upon which he pinned his attack on the refusal to issue the waiver.

While the Civil Rights Act of 1964 was enacted historically to correct abuses in the treatment of blacks, it applies as well to equal protection of whites.

28 U.S.C. § 1343 provides in part:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

▇▇▇ Although FHSAA urged otherwise, the approval by FHSAA of the Board's refusal to grant the waiver is state action for constitutional purposes. Mitchell v. LHSAA, 430 F.2d 1155 (5th Cir. 8/5/70). Thus, I do have jurisdiction to consider the allegations of the complaint. Nevertheless, denial of due process under the fourteenth amendment does not insulate every citizen from every injury of the state. Only those rights, privileges and immunities that are secured by the constitution of the United States or some Act of Congress are within the protection of the federal courts. Rights, privileges and immunities not derived from the federal Constitution or secured thereby are left exclusively to the protection of the states. W. Barron & A. Holtzoff, Federal Practice, § 37 at 200 (Wright Ed. 1960). The privilege of participating in inter-scholastic athletics must be deemed to fall in the latter category and outside the protection of due process. Johnson v. Hood, 430 F.2d 610 (5th Cir. 1970).

The requirement of a waiver is designed to prevent "raids" upon athletic teams. Its objective is also to assure the effectiveness of discipline in preventing an athlete from summarily quitting a team when he dislikes an order of the *coach or requirement regarding training*.[2] The wisdom of Mr. Perdue's

2. The purpose of the association is set forth in Article of its By-Laws as follows:
"2–1–1 The aim of this association shall be to promote, direct, and control all inter-scholastic activities of high school students, both athletic and non-athletic; to establish, maintain, and enforce such regulations as may be necessary to assure that all such activities shall be a part of and contribute toward the entire educational program of the

decision which precludes Andy's playing football does not rise to constitutional dimensions, absent a showing that it was based on color.

Plaintiffs have failed to carry their burden of proving that the minor plaintiff was denied any rights or privileges because of race or color, or that any conspiracy existed to deprive such plaintiff of any rights or privileges guaranteed by the federal Constitution. Accordingly, it is

Ordered and decreed that (a) the prayer for injunctive relief against defendants is hereby denied as to each defendant and (b) this action is dismissed on the merits with prejudice to and at the cost of plaintiffs.

State of Florida; to cooperate closely with the State Department of Education and the development of that program; to safeguard the physical, mental and moral welfare of high school students and protect them from exploitation."