753 So.2d 130 (2000)
L.P.M. and J.D.T., Appellants,
v.
SCHOOL BOARD OF SEMINOLE COUNTY, Florida, Appellee.
No. 5D99-345.
District Court of Appeal of Florida, Fifth District.
January 21, 2000.
Rehearing Denied March 3, 2000.
*131 Howard S. Marks of Graham, Clark, Jones, Builder, Pratt & Marks, Winter Park, and Robert W. Smith, Orlando, for Appellants.
Ned N. Julian, Jr., Sanford, for Appellee.
ORFINGER, M., Senior Judge.
L.P.M. and J.D.T., both former students at Seminole High School, appeal an order of the Seminole County School Board confirming their suspension for 30 days from all extracurricular school activities (but not from school) for violation of the "Citizenship Standards For Participation in School Sponsored Extra-Curricular Activities" (Citizenship Standards) by drinking alcoholic beverages off campus. We affirm.
Appellants were students at Seminole High School (SHS) and played on the football team. Section 3(a) of the "Zero Tolerance" policy of the School Board proscribes possession or being under the influence of alcoholic beverages. The Citizenship Standards provides, in pertinent part:

Off Campus: A student who, while off-campus, is found to have committed any act identified under Section 3(a) of the Zero Tolerance Policy (File JGE) shall be subject to the consequences related to extra-curricular activities listed below for each violation:
First Violationsuspension from all school sponsored extra-curricular activities, including practice and tryouts, for 30 school days.

* * *
On September 8, 1998, Gretchen Schapker, principal of Seminole High School, was informed that students had been drinking alcohol at the beach on the Labor Day holiday. Based on this information, Schapker began an investigation. Schapker spoke with several students, including L.P.M. and J.D.T. (whose names had come up during her investigation), and obtained written statements from them. L.P.M. admitted in his written statements that at the beach on Labor Day he "drank too much and with no food I got sick and passed out"; the statements of other students confirmed that L.P.M. was visibly drunk at the beach. J.D.T. did not admit to drinking, but the statements of other students indicated that J.D.T. either drank or supplied alcohol to others; for example, one of L.P.M.'s statements provides in part that J.D.T. "got into the truck with a bottle of vodka" and L.P.M., J.D.T., and others "drank it on the way to the beach" although J.D.T. "didn't drink that much." Schapker spoke to L.P.M.'s father on the afternoon of Tuesday, September 8; she informed him of what she had learned, and he confirmed that L.P.M. had arrived home from the beach on Monday "pretty rough."
On Wednesday, September 9, Schapker suspended L.P.M. from football practice, and she suspended J.D.T. from practice on Thursday, September 10. However, after these two days, Schapker, either realizing *132 or being told that the suspension was premature, rescinded the suspensions and apparently appellants resumed practice and game participation immediately.[1] On September 14, Schapker sent letters to appellants' parents and the parents of three other students regarding an alleged violation of the Citizenship Standards applicable to athletes. The letters informed the parents of the alleged violation and Schapker's investigation thereof; referred to a telephone conversation that Schapker apparently had with each parent; informed the parents of the right to a hearing; and enclosed a copy of the Citizenship Standards.
On September 28, Schapker had separate meetings with L.P.M. and his parents and with J.D.T. and his parents. Also present at each meeting were two other administrators. L.P.M. admitted drinking alcohol and being under the influence of alcohol on Labor Day, and J.D.T. admitted supplying the bottle of vodka. Following the hearings, on September 28, 1998, Schapker issued notices of suspension to appellants, suspending them from all school-sponsored extracurricular activities for 30 school days.
A Chapter 120 administrative hearing was later conducted before the School Board at which appellants and their parents were present and were represented by counsel. After hearing the testimony of various witnesses, (not including appellants, who refused to testify based on Fifth Amendment rights), the School Board issued its final order suspending appellants from extracurricular activities for 30 days, with credit for the 2 day suspension previously imposed and rescinded. This appeal follows.
Appellants raise several issues, only two of which merit discussion. They contend first that Florida high school students have a constitutionally protected property interest in extracurricular activities and that school officials do not have the authority to discipline a student for off campus activity unrelated to a school event, where such activity does not materially or substantially interfere with the operation of the school.
This court has previously held that a student has no constitutionally protected contract, property or other economic right to participate in interscholastic sports activities. Florida Youth Soccer Ass'n. v. Sumner, 528 So.2d 4 (Fla. 5th DCA 1988). See also, Florida High Sch. Activities Ass'n., Inc. v. Bradshaw, 369 So.2d 398 (Fla. 2d DCA 1979) (the opportunity to participate in interscholastic athletic activities is not a constitutionally protected right). Participation in extra curricular sports activities is a privilege, not a right. Although there is some authority to the contrary, the prevailing view in the country is that no such federally protected property interest exists. See, e.g., Farver v. Board of Educ. of Carroll County, 40 F.Supp.2d 323, 324-325 (D.Md.1999) (denying motion to enjoin suspension of high school students from extracurricular activities based on violation of policy regarding alcohol possession on or off campus, finding no federally protected interest because the Fourteenth Amendment "protects only liberty and property interests that are viewed by the courts as of a high enough dignity to warrant due process protection, and the ability of a high school student to engage in extracurricular activity is simply not of that degree of dignity"); James v. Tallassee High Sch., 907 F.Supp. 364, 366-67 (M.D.Ala.1995) ("It is clear that a majority of the federal courts addressing the question have determined that a student does not have a cognizable property interest in extracurricular activities at public institutions."), aff'd, 104 F.3d 372 (11th Cir.1996); Brands v. Sheldon Community Sch., 671 F.Supp. 627, 631 (N.D.Iowa 1987) ("A clear majority of courts addressing *133 this question in the context of interscholastic or intercollegiate athletics has found that athletes have no legitimate entitlement to participate."); Haverkamp v. Unified Sch. Dist. No. 380, 689 F.Supp. 1055, 1058 (D.Kan.1986) ("The court elects to follow the majority view holding that federally-protected property interests do not exist in participation in interscholastic extracurricular activities."); Paschal v. Perdue, 320 F.Supp. 1274, 1276 (S.D.Fla.1970) ("Rights, privileges and immunities not derived from the federal Constitution or secured thereby are left exclusively to the protection of the states. The privilege of participating in interscholastic athletics must be deemed to fall in the latter category and outside the protection of due process.") (citation omitted); Spring Branch I.S.D. v. Stamos, 695 S.W.2d 556, 561 (Tex.1985) ("The federal courts have made it @clear that the federal constitution's due process guarantees do not protect a student's interest in participating in extracurricular activities."), appeal dismissed, 475 U.S. 1001, 106 S.Ct. 1170, 89 L.Ed.2d 290 (1986).
Other state courts have reached the same conclusion. See Jordan v. O'Fallon Township High Sch. Dist. No. 203 Bd. of Educ., 302 Ill.App.3d 1070, 235 Ill.Dec. 877, 706 N.E.2d 137, 140 (1999) (finding no right to play football under Illinois law, noting that "[f]ootball is neither an integral part of a quality education nor a requirement under any rule or regulation governing education in this State.... Simply put, playing high school football is a privilege rather than a right."); Spring Branch, 695 S.W.2d at 561 (finding that "[n]othing in either our [Texas] state constitution or statutes entitles students to an absolute right to participation in extracurricular activities"); Bailey v. Truby, 174 W.Va. 8, 321 S.E.2d 302 (1984) (finding no property or liberty interest in extracurricular activities under state constitution).
Appellants next complain that the order is void because the school officials did not strictly follow the procedures set forth in the Citizenship Standards. We find this complaint to be without merit. Although not necessarily in the precise sequence set forth in the Standards, the investigative procedures were substantially complied with. The principal did get a written report concerning the alleged violations, interviewed the appellants, notified their parents in writing as to the nature of the violation, sent the parents a copy of the Standards as well as copies of various witness statements, and then afforded the appellants a complete administrative hearing before the School Board at which appellants were represented by counsel and at which evidence and testimony was presented. Appellants were afforded complete due process and we find no basis for reversal of the appealed order on that ground.
Finding no merit in the remaining issues raised by appellants, the order appealed from is
AFFIRMED.
ANTOON, C.J. and THOMPSON, J., concur.
NOTES
[1] However, it appears that L.P.M. was injured during the first quarter of the next game and was out for the rest of the season.