127 P.3d 713 (2005)
129 Wash.App. 632
Jennifer D. NIESHE and Lory Dan Nieshe, Respondents, and
James M. Past and Vicki Past, Plaintiffs,
v.
CONCRETE SCHOOL DISTRICT, Appellants, and
Janis D. Schweitzer, William Giller, Gil Johnson, Concrete School Board, Defendants.
No. 54451-9-I.
Court of Appeals of Washington, Division 1.
July 5, 2005.
Publication Ordered August 9, 2005.
*715 William Coats, Daniel C. Montopoli, Tacoma, for Appellants
K. Garl Long, Mount Vernon, for Respondents.
BAKER, J.
¶ 1 We are asked to decide whether the superior court erred by sustaining a jury verdict in favor of Jennifer Nieshe on a 42 U.S.C. § 1983 claim, under which she argued that the Concrete School District denied her due process when it arbitrarily and capriciously excluded her from participating in a high school graduation ceremony. We conclude that the court erred, and reverse. Nieshe did not have a cognizable right under § 1983 because participation in a graduation ceremony is not a life, liberty, or property interest protected by the Due Process Clause of the Federal Constitution.[1]

I
¶ 2 Jennifer Nieshe (formerly Jennifer Past) became pregnant during her senior year at Concrete High School. In order to graduate, Nieshe had to pass a course called "Current World Problems" (CWP). Students needed a grade of D, or 60 percent, to pass CWP.
¶ 3 During the second half of the last semester, when Nieshe was already several months pregnant, her grade in CWP fell below her previous C minus average. The final exam consisted of two quizzes worth 50 points each. Nieshe received 22 percent on the first quiz. Her teacher, Janis Schweitzer, warned Nieshe that she was in danger of failing CWP, and told her that she needed at least a B on the final quiz in order to pass the class and graduate. Nieshe took the second quiz the day before graduation and received a C, which gave her a grade for the semester of 58.8 percent.
¶ 4 The next morning, on the day of graduation, Principal William Giller met with Nieshe, Schweitzer, and Nieshe's mother to determine whether Nieshe had been treated fairly. Giller reviewed Schweitzer's records and concluded that Nieshe's grade could not be raised to 60 percent under the class grading policy. Giller told Nieshe that she would not graduate just hours before the ceremony was scheduled to begin. Nieshe was not permitted to participate in the graduation ceremony.
¶ 5 The following month, Dr. Marie Phillips became superintendent of Concrete School District. Nieshe's parents contacted Dr. Phillips and informed her of Nieshe's situation. She met with the family and suggested that the school could use a 504 plan to increase Nieshe's grade in CWP. A 504 plan is a type of special education plan, which is applied to students with temporary or permanent disabilities. The plan is not routinely used for pregnant students, but could properly be applied. Dr. Phillips drafted an agreement using the 504 plan, under which the total points that Nieshe could have earned in CWP were reduced by participation points that she was unable to earn due to excused absences. This adjustment allowed Nieshe to graduate.
¶ 6 Almost three years after she was prevented from attending her graduation ceremony, Nieshe, her husband, and her parents filed suit against the District and three individual defendants under 42 U.S.C. § 1983, alleging discrimination and a due process violation. The superior court dismissed Nieshe's parents as plaintiffs for lack of standing and the individual defendants based on qualified immunity. The District moved *716 to exclude evidence of the 504 plan agreement, arguing that it was an offer of compromise and a subsequent remedial measure. The superior court disagreed and denied the motion.
¶ 7 Nieshe asked the superior court to sanction the District for a discovery violation. Nieshe argued that the District violated the discovery rules because it did not produce a computer disk that was in Schweitzer's possession, which contained data of grade reports for the 1999 CWP students. During discovery, Nieshe had requested from the defense "grading records or documents related to grades or grading." Although the District provided the plaintiffs hard copies of Nieshe's grading report, it did not produce the disk until the first day of trial. Schweitzer said that she found the disk while looking for a software program that she had used for grading during the 1998-1999 school year. Schweitzer did not find a copy of the program, but she decided to turn over the disk that she found. The plaintiffs were unable to access the information on the disk. The court concluded that there may have been a discovery violation because the disk was within the scope of discovery and was not produced before trial, but decided that sanctions were not warranted because the information on the disk could not be retrieved.
¶ 8 A jury found that the District violated Nieshe's right to due process by arbitrarily and capriciously violating its own policies and excluding her from the graduation ceremony. It awarded $5,000. The jury found that the District did not discriminate against Nieshe, however. Nieshe moved for entry of judgment and an award of attorney fees and the District moved for judgment as a matter of law and reconsideration. The court denied the District's motion. It entered judgment and awarded Nieshe $5000, $30,864.60 in attorney fees, and $854.60 in costs.

II.
¶ 9 The District makes three arguments on appeal: (1) Nieshe's due process claim was untimely; (2) the trial court erred by not granting the District's motion for judgment as a matter of law; and (3) the trial court erred by admitting evidence of the 504 plan agreement. On cross-appeal, Nieshe argues that the superior court erred by not sanctioning the District for violating the discovery rules.
¶ 10 Whether the statute of limitations bars a claim is a legal question, which we review de novo.[2] We also review an order on a motion for judgment as a matter of law de novo.[3] The trial court's decisions to admit evidence and not to impose discovery sanctions are reviewed for an abuse of discretion.[4]
¶ 11 The District first argues that Nieshe's claim was governed by RCW 28A.645.010, which provides that anyone aggrieved by a school official's decision must appeal the decision within 30 days. But Nieshe filed her due process claim under 42 U.S.C. § 1983, which provides that any state actor who deprives another "of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."[5] When a person acting under the color of state law deprives an individual of due process guaranteed by the federal constitution, the individual may sue under § 1983 for damages. "Section 1983 is derived from § 1 of the Civil Rights Act of 1871," and "was intended to create `a species of tort liability' in favor of persons deprived of federally secured rights."[6] The United States Supreme Court has held that the applicable state law period for personal injury torts is the appropriate limitations period for § 1983 claims *717 arising under the Constitution.[7] Thus, the three year statute of limitations for personal injury torts under Washington law applies to a § 1983 action alleging due process violations.[8]
¶ 12 The jury was not instructed on Nieshe's claim under § 1983, however. The parties entered an agreement, in which Nieshe stipulated to simplifying the jury instructions in exchange for the defendant waiving its right to appeal issues relating to the instructions. The parties complicated matters by stipulating to the sole jury instruction on due process, which states: "To establish the due process claim, the plaintiffs have the burden of proving that the school district arbitrarily or capriciously violated its own policies and, in so doing, excluded Ms. Nieshe from her graduation ceremony."[9] The parties agreed that this instruction was adequate for both the state and federal due process claims, and that a verdict for the plaintiff on the due process claim would be regarded in every way as a verdict for the plaintiff on both the state and federal claims.[10] Additionally, the parties agreed not to instruct the jury on § 1983, stipulating that "a verdict in favor of the plaintiff will be regarded in every way as a verdict on the section 1983 claims."
¶ 13 Nieshe contends that the District thus stipulated away its right to claim that she had no valid § 1983 claim. But the District maintained its objection that the due process claim was not valid. At the point it stipulated to the jury instructions, the court had already decided that there was a cognizable § 1983 claim, and rejected the District's motion to dismiss for timeliness. The District maintained that there was no federally protected interest in a graduation ceremony, that the only due process required was that provided by state law, and therefore Nieshe's claim was necessarily governed by the 30-day statute of limitations. The District excepted to the due process instruction on the grounds that the claim was precluded because it was subject to the 30-day statute of limitations.
¶ 14 Nieshe did not have a cognizable claim under § 1983. Section 1983 only provides a cause of action when an individual has been deprived of a right secured under the laws and Constitution of the United States.[11] We conclude that attending a high school graduation ceremony is not a federally protected right.[12]
¶ 15 Nieshe's due process claim could only arise under the United States Constitution. The Due Process Clause provides *718 two kinds of protection, procedural due process and substantive due process. Procedural due process refers to the procedures that the government must follow before it deprives a person of life, liberty, or property.[13] Substantive due process generally asks whether the government abused its power by arbitrarily depriving a person of a protected interest, or by basing the decision on an improper motive.[14] "An administrative agency's failure to follow its own procedure violates the constitution only when (1) the agency violates minimal constitutional requirements [in violation of procedural due process], or (2) its resulting decision is so arbitrary and capricious that it amounts to a violation of substantive due process."[15]
¶16 Nieshe's § 1983 claim could only concern substantive due process because her arguments are grounded in an allegation of arbitrary and capricious exercise of governmental authority. Further, she has not pointed to any specific procedures that were required under the Constitution.
¶ 17 The fact that the District may have deviated from its procedures, or acted arbitrarily, is not a prima facie deprivation of constitutional due process.[16] Rather, as a threshold matter, Nieshe must establish that she was deprived of a constitutionally protected liberty or property interest.[17] A liberty right is implicated "`[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him.'"[18] Property rights are created by state law. "A protected property interest exists if there is a `legitimate claim of entitlement' to a specific benefit."[19] State procedural protections create a federally protected interest only if they are intended to be a significant substantive restriction on the decisionmaker.[20]
¶ 18 While property rights created under state law warrant certain procedural due process protections,[21] "`[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.'"[22] The Ninth Circuit has noted that "[t]hese fields likely represent the outer bounds of substantive due process protection."[23] In a concurring opinion in Regents of the University of Michigan v. Ewing,[24] Justice Powell explained that substantive rights can only be created by fundamental interests derived from the Constitution.[25]
*719 ¶ 19 In Goss v. Lopez,[26] the Supreme Court held that Ohio law created a federally protected property interest in public education, and explained that "appellees plainly had legitimate claims of entitlement to a public education" because the Ohio Code "direct[ed] local authorities to provide a free education to all residents between five and 21 years of age, and a compulsory-attendance law requires attendance for a school year of not less than 32 weeks."[27] But the Supreme Court has refrained from deciding whether students have a substantive due process right in public education.[28] In Ewing, the Court assumed the existence of a substantive due process right in continued college enrollment free from arbitrary state action, and held that the facts presented did not establish such action.[29] The Court established a firm standard for overriding an academic decision: "[courts] may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."[30]
¶ 20 In sum, it is unclear whether substantive due process protects a student's interest in a public education, much less her interest in a graduation ceremony. Even if it does, the standard for showing arbitrary action in terms of academic decisions is difficult to overcome.[31]
¶ 21 Nieshe cites two sources for the proposition that she had a cognizable right under § 1983. First, she argues that the Supreme Court determined that attending a high school graduation ceremony was a fundamental right in Lee v. Weisman.[32] In Lee, the Court was asked to decide whether including prayer as part of a high school graduation ceremony contravened the Establishment Clause of the First Amendment.[33] To be consistent with the Establishment Clause, the government action had to pass the Lemon test,[34] meaning that it had to: "(1) reflect a clearly secular purpose; (2) have a primary effect that neither advance[ed] nor inhibit[ed] religion; and (3) avoid excessive government entanglement with religion."[35] In analyzing whether the government involvement in religious activity was pervasive, the Court emphasized the significance of a high school graduation ceremony:
Everyone knows that in our society and in our culture high school graduation is one of life's most significant occasions. ... [I]t is apparent that a student is not free to absent herself from the graduation exercise in any real sense of the term "voluntary," for absence would require forfeiture of those intangible benefits which have motivated the student through youth and all her high school years.[36]
The Court placed great social significance on a graduation ceremony, and we do not disagree. Yet, nowhere in the Lee opinion does the Court equate a graduation ceremony with a life, liberty, or property interest protected by the Due Process Clause.
¶ 22 The large majority of jurisdictions that have been presented with the precise question we are confronted with have ruled that a student has no life, liberty, or property interest in a graduation ceremony for purposes *720 of due process.[37] The federal cases are most persuasive. A North Carolina District Court held that a plaintiff's liberty right was not infringed by school officials who denied him the opportunity to participate in a graduation ceremony because it was unreasonable to contend that the plaintiff's good name, reputation, honor, or integrity was at stake.[38] Similarly, a California District Court held that a plaintiff who received a college diploma 11 days late and was precluded from attending graduation was not deprived of liberty, noting that "his good name, reputation or honor or any future opportunities" were not infringed on because "there is nothing on his permanent record which says that he was prevented from attending commencement exercises."[39]
¶ 23 These courts also concluded right in attending a graduation ceremony.[40] To the extent that a federally protected property right exists, it is a creature of state law. We have found no Washington statute that expressly entitles students to a high school graduation ceremony. And we cannot conclude that a graduation ceremony is an extension of the property interest in a high school education and diploma. As a Pennsylvania court explained, "a graduation ceremony is not within the scope of any property right which might exist ... for the reason that commencement ceremonies are only symbolic of the educational end result, not an essential component of it."[41]
¶ 24 Nieshe's second source for her contention that she had a protected interest in attending her high school graduation ceremony is WAC 180-40-215, which guarantees that students are not deprived of the right to an equal educational opportunity without due process of law.[42] As explained, a graduation ceremony is not an "educational opportunity." *721 Regardless, the fact that the state guarantees students certain due process procedures does necessarily create a federally protected interest. State law does not expressly reference the right to attend a high school graduation ceremony, or require significant procedures and guidelines for decision makers to follow before forbidding a student to participate in a graduation ceremony. And the State certainly has not created a property interest on the same plane as "`marriage, family, procreation, and the right to bodily integrity,'"[43] thus warranting substantive due process protections.
¶25 Nieshe was not deprived of a life, liberty, or property interest protected by the United States Constitution and therefore she could not prevail on a § 1983 claim. The superior court erred by not granting the District's motion for judgment as a matter of law.[44]
¶ 26 The final issue we address is whether the superior court erred by not sanctioning the District for a discovery violation. A trial court has broad discretion on whether to issue sanctions for discovery violations.[45] We will not disturb a court's decision on appeal unless there is a clear showing of abuse of discretion; that is if it was based on untenable grounds or made for untenable reasons.[46]
¶ 27 Courts may sanction parties under CR 37(b)(2) for two reasons: (1) failure of a party to comply with an order to provide or permit discovery and (2) failure of a party to respond to a request for discovery under CR 33 or CR 34, or to appear after proper notice for a deposition.[47] This case is similar to Chen v. State Farm Mutual Automobile Insurance Company,[48] in which the plaintiff served interrogatories and requests for discovery on the defendant.[49] The plaintiff did not move to compel more complete answers. But, after the discovery deadline had passed, she filed a motion for sanctions for alleged discovery abuses concerning the interrogatory responses.[50] We held that the superior court did not abuse its discretion by not imposing sanctions, explaining that "[s]anctions are appropriate only when a party fails `to obey an order to provide or permit discovery'" and the plaintiff did not identify a discovery order that the defendant failed to obey.[51]
¶ 28 Similarly, Nieshe first alleged that the District violated a production request during trial, after Schweitzer volunteered the computer disk. During discovery, the District responded to the plaintiffs' request for production under CR 34. Nieshe did not request the court to order the District to produce additional documents under CR 37(a). Thus, sanctions were not authorized. Additionally, because the court could not find that the computer disk contained any information that Nieshe did not already have, sanctions were not warranted.
¶ 29 REVERSED
WE CONCUR: COX, C.J., and AGID, J.
NOTES
[1] U.S. Const. amend V.
[2] Bennett v. Computer Task Group, Inc., 112 Wash.App. 102, 106, 47 P.3d 594 (2002).
[3] Brown v. Superior Underwriters, 30 Wash.App. 303, 306, 632 P.2d 887 (1980).
[4] Chen v. State Farm Mut. Auto. Ins. Co., 123 Wash.App. 150, 160, 94 P.3d 326 (2004), rev. denied, 153 Wash.2d 1024, 110 P.3d 755 (2005).
[5] 42 U.S.C. A. § 1983 (West 2003).
[6] Smith v. Wade, 461 U.S. 30, 34, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).
[7] City of Rancho Palos Verdes, Cal. v. Abrams, 544 U.S. 113, ___ n. 5, 125 S.Ct. 1453, 1460 n. 5, 161 L.Ed.2d 316 (2005).
[8] RCW 4.16.080(2); Doggett v. Perez, 348 F.Supp.2d 1169, 1173 (E.D.Wash.2004).
[9] Jury Instruction 6.
[10] It is unclear why Nieshe pled a state due process claim, either constitutional or statutory, because she did not request a remedy that the court could grant. Nieshe could not recover damages and attorney fees by means of a state claim because § 1983 only provides a cause of action when an individual has been deprived of a right secured under the laws and Constitution of the United States. See infra note 11 and accompanying text. In her complaint, Nieshe requested a declaratory judgment that the District cannot violate its own policy to inform parents when a student is failing. But the District's policy is not binding law, and the court does not have the power to legislate and declare school policy law. See Korslund v. DynCorp Tri-Cities Serv., Inc., 121 Wash.App. 295, 323, 88 P.3d 966 (2004) (explaining that policy statements are merely "general statements of company policy and, thus, not binding"). The superior court did not grant this relief, and Nieshe has not requested such relief on appeal.
[11] See Gonzaga Univ. v. Doe, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) ("Section 1983 provides a remedy only for the deprivation of `rights, privileges, or immunities secured by the Constitution and laws' of the United States."); Nevada v. Hicks, 533 U.S. 353, 404, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) (explaining that § 1983 "merely provides a federal cause of action for the violation of federal rights that are independently established either in the Federal Constitution or in federal statutory law").
[12] We requested that the parties address this issue during oral argument because it was not briefed well on appeal. The District summarily raised this issue by arguing that there is no "civil right" to attend a graduation ceremony. But, in its briefs below, particularly in its motion for judgment as a matter of law, the District maintained that there was no fundamental right to participate in a graduation ceremony.
[13] McKinney v. Pate, 20 F.3d 1550, 1559 (11th Cir.1994).
[14] Indep. Enter. Inc. v. Pittsburgh Water and Sewer Auth., 103 F.3d 1165, 1179 (3rd Cir.Pa.1997); McKinney, 20 F.3d at 1558.
[15] Danielson v. City of Seattle, 45 Wash.App. 235, 244, 724 P.2d 1115 (1986), aff'd, 108 Wash.2d 788, 742 P.2d 717 (1987).
[16] Williams v. City of Seattle, 607 F.Supp. 714, 718-19 (W.D.Wash.1985).
[17] Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir.Cal.1998); Indep. Enterp., 103 F.3d at 1179; Corneal v. Jackson Township, 313 F.Supp.2d 457, 465 (M.D.Pa.2003), aff'd, 94 Fed.Appx. 76 (3d Cir.2004); Scott v. City of Seattle, 99 F.Supp.2d 1263, 1269 (W.D.Wash.1999). See Lane v. Ocosta Sch. Dist. No. 172, 13 Wash.App. 697, 703, 537 P.2d 1052 (1975) (holding that "[s]ince no fundamental right [of the plaintiffs'] has been violated, the court did not have the jurisdiction to determine whether the school board's action was arbitrary or capricious"), abrogated on other grounds, Haynes v. Seattle Sch. Dist. No. 1, 111 Wash.2d 250, 758 P.2d 7 (1988).
[18] Goss v. Lopez, 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1974)).
[19] Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir.Wash.1984) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).
[20] Goodisman, 724 F.2d at 820.
[21] Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J. concurring).
[22] Nunez, 147 F.3d at 871 n. 4 (quoting Albright v. Oliver, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).
[23] Nunez, 147 F.3d at 871 n. 4.
[24] 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985).
[25] Ewing, 474 U.S. at 229-30, 106 S.Ct. 507 (Powell, J. concurring). See also McKinney, 20 F.3d at 1556 (explaining that substantive due process only protects fundamental rights implicit in the concept of ordered liberty).
[26] 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).
[27] Goss, 419 U.S. at 573, 95 S.Ct. 729.
[28] Ewing, 474 U.S. at 222, 106 S.Ct. 507; Bd. of Curators of the Univ. of Missouri v. Horowitz, 435 U.S. 78, 91-92, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978).
[29] Ewing, 474 U.S. at 223, 106 S.Ct. 507.
[30] Ewing, 474 U.S. at 225, 106 S.Ct. 507.
[31] Horowitz, 435 U.S. at 89-90, 98 S.Ct. 948. See also Lisa L. Swern, Note, Due Process Rights in Student Disciplinary Matters, J.C. & Univ. L. 359, 362 (Fall 1987) (explaining that academic dismissals require minimal procedural protection).
[32] 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992).
[33] Lee, 505 U.S. at 580, 112 S.Ct. 2649.
[34] Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).
[35] Lee, 505 U.S. at 585, 112 S.Ct. 2649. See also Lemon, 403 U.S. at 612-13, 91 S.Ct. 2105 (establishing test).
[36] Lee, 505 U.S. at 595, 112 S.Ct. 2649.
[37] Bundick v. Bay City Indep. Sch. Dist., 140 F.Supp.2d 735, 739 (S.D.Tex.2001); Swany v. San Ramon Valley Unified Sch. Dist., 720 F.Supp. 764, 774 (N.D.Cal.1989); Fowler v. Williamson, 448 F.Supp. 497, 502 (W.D.N.C.1978); Dolinger v. Driver, 269 Ga. 141, 498 S.E.2d 252, 254 (1998); Mifflin County Sch. Dist. v. Stewart by Stewart, 94 Pa.Cmwlth. 313, 503 A.2d 1012, 1013 (1986). See also Smith v. North Babylon Union Free Sch. Dist., 844 F.2d 90, 94 (2nd Cir.N.Y.1988) (holding that a plaintiff's interest in attending a graduation ceremony is not protected by the free exercise clause because the ceremony is "merely a social occasion at which students and their families and friends gather to mark an event," and not "an important benefit conferred by the state"). But see Crump v. Gilmer Indep. Sch. Dist., 797 F.Supp. 552, 554 (E.D.Tex.1992) (implying a property interest in a graduation ceremony).
[38] Fowler, 448 F.Supp. at 501.
[39] Swany, 720 F.Supp. at 775.
[40] Swany, 720 F.Supp. at 773; Fowler, 448 F.Supp. at 502. See also Bundick, 140 F.Supp.2d at 739.
[41] Mifflin County Sch. Dist., 503 A.2d at 1013. A few courts have determined that certain extracurricular activities associated with education are protected property interests. A district court held that a student was entitled to procedural due process before being suspended from a high school football team because participation was "vital and indispensable to a college scholarship and, in essence, a college education." Boyd v. Bd. of Directors of McGehee Sch. Dist. No. 17, 612 F.Supp. 86, 93 (E.D.Ark.1985). The prevailing view, however, is that participation in extracurricular activities, including school sports, is not a property interest warranting due process protection. E.g., Seamons v. Snow, 84 F.3d 1226, 1235 (10th Cir.Utah 1996); Marner ex rel. Marner v. Eufaula City Sch. Bd., 204 F.Supp.2d 1318, 1324 (M.D.Ala.2002); Farver v. Bd. of Educ. of Carroll County, 40 F.Supp.2d 323, 324-325 (D.Md.1999); James by and Through Singleton v. Tallassee High Sch., 907 F.Supp. 364, 366-67 (M.D.Ala.1995) aff'd, 104 F.3d 372 (11th Cir.Ala.1996); Brands v. Sheldon Cmty. Sch., 671 F.Supp. 627, 631 (N.D.Iowa 1987); Haverkamp v. Unified Sch. Dist. No. 380, 689 F.Supp. 1055, 1058 (D.Kan.1986); Paschal v. Perdue, 320 F.Supp. 1274, 1276 (S.D.Fla.1970); L.P.M. v. Sch. Bd. of Seminole County, 753 So.2d 130, 132 (Fl.App.2000).
[42] WAC 180-40-215(5). More specifically, state law requires that students be afforded the "right to an informal conference with the building principal or his or her designee for the purpose of resolving the grievance" when they are excluded from school activities for disciplinary reasons. WAC 180-40-240 (adopted pursuant to RCW 28A.305.160(1)). Nieshe was prevented from attending her graduation ceremony due to academic reasons-before the 504 plan was applied, she did not pass CWP and obtain the necessary credits. It is unclear whether the State provides the same due process to students who are excluded from extracurricular activities for academic reasons. See WAC 180-40-205 (providing that "`Discipline' shall mean all forms of corrective action or punishment"). Regardless, Nieshe met with her principal to resolve the grievance before the graduation ceremony.
[43] Nunez, 147 F.3d at 871 n. 4 (quoting Albright v. Oliver, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).
[44] In light of our holding, we do not decide whether the superior court erred by admitting evidence of the 504 plan agreement.
[45] Burnet v. Spokane Ambulance, 131 Wash.2d 484, 494, 933 P.2d 1036 (1997) (citing Phillips v. Richmond, 59 Wash.2d 571, 369 P.2d 299 (1962)); Demelash v. Ross Stores, Inc., 105 Wash.App. 508, 530, 20 P.3d 447 (2001).
[46] Burnet, 131 Wash.2d at 494, 933 P.2d 1036 (citing Assoc. Mortgage Investors v. G.P. Kent Constr. Co., 15 Wash.App. 223, 229, 548 P.2d 558 (1976)).
[47] Pamelin Indus., Inc. v. Sheen-U. S. A., Inc., 95 Wash.2d 398, 401, 622 P.2d 1270 (1981). See CR 37(b)(2) (authorizing a court to issue sanctions for failing to abide by an order to provide or permit discovery); CR 37(d) (authorizing a court to issue CR 37(b)(2) sanctions for failure to attend a deposition or respond to interrogatories or production requests).
[48] 123 Wash.App. 150, 94 P.3d 326 (2004).
[49] Chen, 123 Wash.App. at 159, 94 P.3d 326.
[50] Chen, 123 Wash.App. at 159, 94 P.3d 326.
[51] Chen, 123 Wash.App. at 160, 94 P.3d 326 (quoting CR 37(b)(2)).