**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| DONALD I. BERG and KAREN BERG,<br><br>          Appellants,<br><br>          v.<br><br>CITY OF KENT, a Washington municipal corporation,<br><br>          Respondent,<br><br>MATT GILBERT and JANE DOE GILBERT, individually and as a marital community and in Matt Gilbert's official capacity as the principal planner for the city of Kent; SHARON CLAMP and JOHN DOE CLAMP, individually and as a marital community and in Sharon Clamp's official capacity as the planner for the city of Kent; CHARLENE ANDERSON and JOHN DOE ANDERSON, individually and as a marital community and in Charlene Anderson's official capacity as the planning manager for the city of Kent; and JOHN and JANES DOES 1-10,<br><br>          Defendants. | No. 81253-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — The Bergs appeal from summary judgment dismissing their tort suit. The Bergs claimed that the City's decision to commence a code enforcement action violated their rights to substantive due process and equal

protection. They also claimed that the City violated the Public Records Act, chapter 42.56 RCW. We affirm.

FACTS

This is the second appeal regarding the city of Kent's (City) 2012 code enforcement action against the Bergs for expanding and intensifying their nonconforming outdoor storage yard. City of Kent v. Berg, No. 73269-2-I, slip op. at 2, 4 (Wash. Ct. App. Dec. 5, 2016) (unpublished) (Berg I), www.courts.wa.gov/opinions/pdf/732692.pdf. In 2006, Donald and Karen Berg (the Bergs) purchased two parcels of property, known as Shady Park, in Kent. Id. at 2, 4. At that time, the Shady Park property was zoned Neighborhood Convenience Commercial (NCC), which prohibited outdoor commercial storage. Id. at 2-3.

In 2009, the City began receiving complaints concerning increased storage of vehicles, heavy equipment, recreational vehicles, and boats on the property. Id. at 4. The City notified the Bergs that they needed to reduce the size of the outdoor storage area to earlier levels.[1] Id. Despite the City's requests, between 2009 and 2011, the Bergs increased the use of the property for outdoor storage. Id. The City did not take enforcement action based on the Bergs' assurance that they would comply. Id.

---

[1] In 1996, the Shady Park property's undeveloped area consisted of trees and bushes, with only a small portion being used for vehicle storage. Berg I, No. 73269-2-I, slip op. at 14. But, by 2002, the prior property owner began clearing away vegetation and parking vehicles throughout the rest of the property. Id. The property became a full storage business. Id. After purchasing the property, the Bergs continued using the land in this manner. Id.

In 2011, the Bergs' property manager, Tom Glenn, met with the City's planning staff to discuss the outdoor storage situation. Id. The City informed the Bergs that they could apply for a conditional use permit if they wanted to use the property in a manner inconsistent with the City's zoning. Id. at 5. The Bergs did not apply for such a conditional use permit. Id.

In 2012, the Bergs failed to discontinue use of the expanded outdoor storage area. Id. On March 9, 2012, the City issued a correction notice that required them to remove and cease operating the outdoor storage yard. Id. The Bergs did not comply. Id. On May 24, 2012, the City issued a notice of violation. Id. The Bergs appealed the notice to the City's hearing examiner "claiming that the storage on the entire property was legal nonconforming use." Id.

On December 3, 2013, the hearing examiner found that the Bergs had violated the City's zoning code, required them to carry out the correction action, and ordered them to pay the monetary penalties set forth in the notice of violation. Id. at 5-7. The Bergs appealed the hearing examiner's decision to King County Superior Court under the Land Use Petition Act (LUPA),[2] which upheld the decision in a March 2015 order. Id. at 7. The Bergs immediately appealed the superior court's LUPA order to this court. Id.

In June 2015, while review of Berg I was still pending in this court, the Bergs filed a CR 60 motion with the superior court seeking relief from the LUPA order. Id. at 7. The Bergs based their CR 60 motion on "newly discovered evidence which was highly material to the issues in [the] LUPA appeal, in the form of testimony by

_____

[2] Chapter 36.70C RCW.

3

the [City's] formerly employed code enforcement officer Brian Swanberg." In August 2015, the superior court denied the CR 60 motion. Berg I, No. 73269-2-I, slip op. at 7. The Bergs then recommenced their appeal adding an assignment of error for the denial of their CR 60 motion. Id.

In affirming the hearing examiner's decision and superior court's orders, we concluded in pertinent part that the "record clearly demonstrates an expansion and intensification of the use as it changed from auto repair shop storage to a separate storage business." Id. at 14-15. Citing Miller v. City of Bainbridge Island, 111 Wn. App. 152, 163, 43 P.3d 1250 (2002), we rejected the Bergs' argument that the City acquiesced in the expansion, explaining that "[a]ny failure by the City to enforce its zoning code or any representations made that the uses were legal does not constitute approval." Id. at 15 n.14. We also determined that the superior court did not abuse its discretion in denying the Bergs' CR 60 motion. Id. at 18.

On January 3, 2018, pursuant to the Public Records Act, the Bergs' legal counsel asked the City to produce "[a]ny and all public records that relate and/or refer to Brian Swanberg directly and/or indirectly . . . and all metadata associated with [any] electronic records." The City responded the next day, clarified the scope of counsel's request during a telephone conversation, and memorialized the clarification.

The City produced responses to counsel's request in three installments. In its first installment, on February 2, 2018, the City produced e-mails in native format and a log of records withheld as exempt from disclosure. The second installment, on February 16, 2018, mainly contained court filings from the Bergs' appeal of the

4

2012 code-enforcement proceeding. The third and final installment, on March 12, 2018, consisted of redacted e-mails in portable document format (PDF) with a redaction/withholding log explaining the redactions and withholdings exempt from production. Days later, counsel asked the City for the third installment's e-mails in native format. The City responded that it "couldn't produce redacted e-mails in native format, because [it] couldn't apply redactions in that format."

On June 4, 2018, the Bergs filed this action against the City and several individuals[3] in King County Superior Court. They asserted: (1) an inverse condemnation and takings claim against the City, (2) substantive due process claims against the City and the individuals, (3) 42 U.S.C. § 1983 claims against the individuals, (4) equal protection claims against the City and individuals, and (5) a violation of the Public Records Act claim against the City.

In July 2018, the Bergs submitted an application for a conditional use permit to the City, "seeking to utilize the full scope of their property for storage."

In August 2018, the City was served with a copy of the Bergs' summons and complaint. Upon reviewing the Public Records Act claim and learning that the Bergs' counsel wanted metadata for e-mails produced in the third installment, the City started researching whether it was possible to do so. With the assistance of a Kent Police Department forensic detective, the City was able to export metadata from the e-mails to an Excel spreadsheet. The City then redacted the information that it had previously redacted.

---

[3] At that time, all of the individuals (Matt Gilbert, Sharon Clamp, and Charlene Anderson) were City employees.

In September 2018, the City removed the Bergs' tort action to the United States District Court for the Western District of Washington on the basis of federal question jurisdiction. Shortly thereafter, the City provided the Bergs' counsel with copies of the spreadsheet, a redaction/withholding log, and a letter explaining "what the spreadsheet was and how it was redacted."

In October 2018, the City produced an additional 62 files that contained metadata that had been produced as part of the third installment, in text files, with privileged content redacted.

In November 2018, the City's hearing examiner approved the Bergs' application for a conditional use permit that allowed them to use the entire Shady Park property for outdoor storage subject to conditions.

Meanwhile, in the federal court proceedings, the City and the individuals filed a motion to dismiss the Bergs' complaint and the Bergs moved to remand their action to superior court. On December 11, 2018, the federal district court remanded all of the Bergs' claims except for the 42 U.S.C. § 1983 claim against the individuals, which the court dismissed with prejudice and without leave to amend.

In March 2019, the Bergs amended their complaint to assert only claims of substantive due process, equal protection, and Public Records Act violations against the City.

In January 2020, the City filed a motion for summary judgment. The City argued that the Bergs' constitutional claims should be dismissed as time-barred by the statute of limitations or, alternatively, dismissed due to lack of evidence. The

City also argued that it complied with the Public Records Act, so the Bergs' violation claim should be dismissed.

The superior court heard the motion in February 2020. At the hearing, the Bergs acknowledged that they did not have a "right of action under the Washington State Constitution." The Bergs clarified that their due process and equal protection claims were based on the initiation of the City's code-enforcement action and were "seeking compensation for the losses that we've suffered as a result of the [C]ity's action." They also agreed that their Public Records Act claim was based on the City's wrongful withholding of the metadata and an inadequate exemption log.

In granting the City's motion for summary judgment, the superior court explained that the Bergs "concede there is no recognized cause of action in tort for violations of the Washington Constitution, so their claim for violation of the state constitution is dismissed with prejudice." The court found that the City's decision to initiate the code enforcement proceeding "was permissible under the Constitution" and that the Bergs had not presented evidence to support their due process claim. The equal protection claim failed, the court said, because the Bergs failed to present admissible evidence that the City discriminated against them. Lastly, the court dismissed the Public Records Act claim, noting:

> The City of Kent did not wrongfully withhold metadata from redacted e-mails or the native version of redacted e-mails.
>
> Nor did the Bergs present evidence that the City of Kent wrongfully redacted or withheld privileged materials. The City of Kent produced an exemption log for redacted and withheld materials, and the log provided information sufficient for the Bergs to determine the basis for each exemption.

The Bergs appeal.

DISCUSSION

The Bergs argue that the superior court erred in dismissing their claims on summary judgment. We disagree.

We review a summary judgment order de novo and engage in the same inquiry as the superior court. Beaupre v. Pierce County, 161 Wn.2d 568, 571, 166 P.3d 712 (2007). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. CR 56(c); Lowman v. Wilbur, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013). A party opposing summary judgment may not rely solely on allegations made in its pleadings but "'must set forth specific facts showing that there is a genuine issue for trial.'" Young v. Key Pharms., Inc., 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989) (quoting CR 56(e)). We view the facts and all reasonable inferences in the light most favorable to the nonmoving party. Babcock v. State, 116 Wn.2d 596, 599, 809 P.2d 143 (1991). On appeal, we may affirm the superior court's summary judgment decision on any ground supported by the record. LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

I. Constitutional Claims

In Washington, federal civil rights claims, such as the Bergs' 42 U.S.C. § 1983 claims here, are subject to a three year statute of limitations.[4] RCW

---

[4] RCW 4.16.080 states, "The following actions shall be commenced within three years: . . . (2) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated."

4.16.080(2); Nieshe v. Concrete Sch. Dist., 129 Wn. App. 632, 638-39 & n.8, 127 P.3d 713 (2005) (RCW 4.16.080(2) "applies to a § 1983 action alleging due process violations"); Fager v. Olympic Peninsula Narcotics Enf't Team, 700 Fed. Appx. 569, 570 (9th Cir. 2017) (affirming the district court's decision that RCW 4.16.080 applied to the appellant's Fourth Amendment, due process, and wrongful discharge claims).

Federal law determines when a cause of action under § 1983 accrues and the statute of limitations beings to run. Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." TwoRivers v. Lewis, 174 F.3d 987, 991-92 (9th Cir. 1999). Courts look to see if the plaintiff has "alleged 'discrete acts' that would violate the Constitution that occurred within the limitations period" to determine whether claims are timely. RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d (2002)). "[I]n determining when an act occurs for statute of limitations purposes, we look at when the 'operative decision' occurred, and separate from the operative decisions those inevitable consequences that are not separately actionable." Id. (citation omitted) (quoting Chardon v. Fernandez, 454 U.S. 6, 8, 102 S. Ct. 28, 70 L. Ed. 2d 6 (1981)) (citing Delaware State Coll. v. Ricks, 449 U.S. 250, 258, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980)).

In this case, the Bergs contend that their "substantive due process and equal protection claims relate to the City's pursuit of a code enforcement

9

proceeding in order to deprive [them] of the full use of their real property, for no valid public purpose." (Emphasis added.) The record is clear that the Bergs were aware of the basis of their claims against the City, for initiating the proceedings, as early as March 9, 2012 (date of the City's correction notice) and as late as May 24, 2012 (date of the City's notice of violation). The City's notices were the operative decisions triggering the accrual of their action and the running of the statute of limitations. The limitations on their constitutional claims expired, at the latest, in May 2015. As such, the Bergs' June 2018 complaint and March 2019 first amended complaint are time-barred.

The Bergs argue that their constitutional claims cannot be untimely because they were unripe as of December 2018. In support of this argument, the Bergs cite the federal district court's order remanding their initial complaint to the superior court. There, based on the ripeness requirements set forth in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), the district court ruled that the Bergs' inverse condemnation and taking claims, and related substantive due process and equal protection claims, were not ripe. Under Williamson County, a takings claim is ripe only if the plaintiff can establish that (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," and (2) the plaintiff has sought "compensation through the procedures the State has provided for doing so." Id. at 186, 194. The Ninth Circuit Court of Appeals has also applied Williamson County's requirement to other constitutional claims. See Del Monte Dunes at Monterey, Ltd.

v. City of Monterey, 920 F.2d 1496, 1507 (9th Cir. 1990) ("In evaluating the ripeness of due process or equal protection claims arising out of the application of land use regulations, we employ the same final decision requirement [from Williamson County] that applies to regulatory taking claims.").

The Bergs, therefore, contend that their substantive due process and equal protection claims are subject to Williamson County's ripeness requirement, not the statute of limitations. But, this contention ignores recent United States Supreme Court authority overruling Williamson County, which the Court did in Knick v. Township of Scott, Pennsylvania, ___ U.S. ___, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019).

In Knick, the Court "granted certiorari to reconsider the holding of Williamson County that property owners must seek just compensation under state law in state court before bringing a federal takings claim under § 1983." Id. at 2169. The Court explained that Williamson County was wrongly decided:

> We conclude that a government violates the Takings Clause when it takes property without compensation, and that a property owner may bring a Fifth Amendment claim under § 1983 at that time. That does not as a practical matter mean that government action or regulation may not proceed in the absence of contemporaneous compensation. Given the availability of post-taking compensation, barring the government from acting will ordinarily not be appropriate. But because the violation is complete at the time of the taking, pursuit of a remedy in federal court need not await any subsequent state action. Takings claims against local governments should be handled the same as other claims under the Bill of Rights. Williamson County erred in holding otherwise.

Id. at 2177. The Court then, after considering application of the principle of stare decisis, overruled the state litigation requirement of Williamson County. Id. at

2179. The Bergs neither addressed <u>Knick</u> in their responsive summary judgment pleadings below nor in their appellate briefing.

In sum, <u>Williamson County</u> no longer applies for the proposition for which the Bergs offer it, so their argument fails. And, because we conclude that their substantive due process and equal protection claims are time barred, we do not reach the remaining arguments as to their merit.

## II. Metadata

Next, the Bergs argue that the superior court improperly dismissed their claim that the City violated the Public Records Act by failing to produce the third installment of e-mails in digital format with metadata intact. We disagree.

The Public Records Act mandates the broad disclosure of public records. <u>Resident Action Council v. Seattle Hous. Auth.</u>, 177 Wn.2d 417, 431, 327 P.3d 600 (2013). Governmental agencies must disclose any public record on request unless it falls within a specific, enumerated exemption. <u>Neighborhood Alliance of Spokane County v. Spokane County</u>, 172 Wn.2d 702, 715, 261 P.3d 119 (2011). "The burden is on the agency to show a withheld record falls within an exemption, and the agency is required to identify the document itself and explain how the specific exemption applies in its response to the request." <u>Id.</u>

Our review of challenges to an agency action under the Public Records Act is de novo. RCW 42.56.550(3); <u>Resident Council</u>, 177 Wn.2d at 428.

Here, the Bergs' counsel requested documents in electronic format "and any and all metadata associated with the electronic records."[5] After clarifying counsel's request, the City produced two installments in February 2018 that included e-mail communications in digital format with metadata. In March 2018, the City produced a third installment that included 648 printed pages of e-mail communications and a redaction/withholding log.

The City determined that the third installment of e-mails contained privileged material subject to redaction and it was not possible to produce e-mails in digital format with redactions. Thus, those e-mails, the City said, "were printed out, reviewed and marked for privilege by the City Attorney's Office, scanned to PDF, and then redacted in Adobe." According to counsel, the City explained "that it was impossible to produce the metadata for e-mails withheld on the basis of attorney-client privilege." Counsel, however, agreed that the "redacted printouts" of the e-mails were responsive, but complained that "the metadata was clearly not there" and challenged the City's redaction/withholding log.

After the Bergs commenced this action, the City found a way to "export metadata from the e-mails to an Excel spreadsheet." "The spreadsheet had columns for types of metadata (e.g., sender name, recipients, delivery date, e-mail subject line, body of e-mail, information about attachments) and a row for each e-

---

[5] "Metadata" is the "'data about data' or hidden information about electronic documents created by software programs." O'Neill v. City of Shoreline, 170 Wn.2d 138, 143, 240 P.3d 1149 (2010) (quoting Jembaa Cole, When Invisible Electronic Ink Leaves Red Faces: Tactical, Legal and Ethical Consequences of the Failure to Remove Metadata, 1 SHIDLER J. L. Com. & Tech. 8, ¶ 7 (Feb. 2, 2005)). Metadata embedded in an electronic record is a public record subject to disclosure. Id. at 147.

mail." "The City then deleted the contents" in some columns "to match previous redactions of privileged material" and produced the Excel spreadsheet. In short, the City produced the metadata in written form, in a spreadsheet, subject to redactions, separately from the e-mails, but identifying the e-mail to which it applied.

The Bergs' challenge to the City's conduct is to the format in which it produced the metadata. The Bergs also argued that "exporting metadata into another application" was "disingenuous" and eliminated "the public's ability to receive both searchable e-mails with corresponding valid metadata." Critically, however, the Bergs did not present any evidence to rebut the City's assertion that it was impossible to produce the metadata digitally and maintain necessary redactions. If the Bergs had done so, the burden would have returned to the City to either produce those records or overcome the Bergs' evidence.

Moreover, the information the City redacted from the metadata was also redacted in the printouts previously produced in the third installment. The Bergs did not identify any information produced in the metadata that had not been included in the prior production. Based on this record, we conclude that the City's conduct did not violate the Public Records Act by presenting metadata in a written format for records subject to redaction. The superior court did not err in granting the City's motion on this issue.

III. Exemption Log

Finally, the Bergs contend that the City's redaction/withholding log was inadequate because it did not include information that would enable them to determine whether privilege was properly asserted.

"When an agency withholds or redacts records, its response 'shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld.'" City of Lakewood v. Koenig, 182 Wn.2d 87, 94, 343 P.3d 335 (2014) (quoting RCW 42.56.210(3)). RCW 42.56.210(3) requires that an agency identify with particularity the specific record information being withheld, and the specific exemption authorizing the withholding. Id. "The log should include the type of information that would enable a records requester to make a threshold determination of whether the agency properly claimed the privilege." Gronquist v. Dep't of Licensing, 175 Wn. App. 729, 744, 309 P.3d 538 (2013).

Here, the City provided the Bergs' counsel with a "Public Records Request Redaction/Withholding Log," containing several columns of information and a key to understanding the "exemption authority and explanation of how [the] exemption applies to [the] document." Specifically, for each e-mail, the City's log identified the delivery date and time, full names of senders and recipients, subject line, and information about the content and attachments. The log indicated whether e-mails were being redacted or withheld (and the number of pages being withheld). Lastly, the log specified whether the e-mails were exempt under code "A," code "B," or both.

According to the City's key, code "A" means the "document is protected attorney-client privileged communication because it is communication between clients, legal counsel, and/or agents for the purpose of obtaining or providing legal advice." It cites RCW 42.56.290, RCW 42.56.070, and RCW 5.60.060(2) as authority. The key also explained that the "document was withheld in its entirety if redaction would not sufficiently protect the privilege, such as if a document was e[-]mailed and exchanged in the course of such privileged communication." The key identified code "B" as follows:

> RCW 42.56.290 provides that records relevant to a controversy are exempt from public disclosure if they would not be disclosable to an opposing party under the civil rules of discovery. "Work product", created during litigation or in reasonable anticipation of litigation, is not subject to disclosure under the rules of discovery. The identified documents are "work product" and may consist of communication, drafts, notes, memoranda, research, or other documents that contain factual information, mental impressions, research, legal theories, opinions, and conclusions; were not prepared in the ordinary course of business; and were prepared, collected, or assembled by an attorney, the client, or an agent of the attorney or client for litigation or in reasonable anticipation of litigation. As work product, these documents are exempt from public disclosure because they would not be disclosable to an opposing party under the civil rules of discovery. Accordingly, privileged work product has been redacted or withheld as indicated. If redaction would not sufficiently protect the privilege, the entire record was withheld.

Based on the information contained in the City's redaction/withholding log combined with its key, we conclude that this production allowed the Bergs to make a threshold determination about whether the claimed exemption is valid.[6]

---

[6] On appeal, the Bergs note that "[n]o in camera review of the redacted material occurred to review the claims of privilege." But, the record reveals that they never requested such review.

CONCLUSION

The superior court did not err in granting the City's motion for summary judgment and dismissing the Bergs' claims.[7]

We affirm.

Appelwick, J.

WE CONCUR:

Chun, J.          Verellen, J.

---

[7] Since the Bergs do not prevail on appeal, we deny their request for fees.