94 P.3d 326 (2004)
Juan CHEN, a married woman, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Respondent.
No. 51377-0-I.
Court of Appeals of Washington, Division 1.
May 3, 2004.
Publication Ordered July 12, 2004.
*327 Graham Greenlee, Seattle, WA, for Appellant.
Colleen Barrett, Gregory Worden, Seattle, WA, for Respondent.
BECKER, J.
Juan Chen's insurer, State Farm, paid for damage to her car after she was injured in a car accident. Chen sued and settled with the insurer of the driver who was at fault, recovering damages for her personal injuries. State Farm had a classic subrogation right to recover the property damages directly from the other driver's insurer and did so without any help from Chen. The trial court properly found that she was not entitled to have State Farm pay a pro rata share of the attorney fees attributable to the property damage. The court also properly dismissed Chen's bad faith suit against State Farm.
Review of summary judgment orders is de novo. Hadley v. Maxwell, 144 Wash.2d 306, 310, 27 P.3d 600 (2001). The appellate court engages in the same inquiry as the trial court, and considers the facts and all reasonable inferences from the facts in the light most favorable to the nonmoving party. Right-Price Recreation, L.L.C v. Connells Prairie Community Council, 146 Wash.2d 370, 381, 46 P.3d 789 (2002). The facts stated in the light most favorable to Chen are as follows.
On May 30, 1997, James Vaughn struck Juan Chen from behind as she was stopped to make a right hand turn. Chen suffered injuries to her neck and back. State Farm paid Chen $5,915.44 in personal injury protection (PIP) benefits, and $8,773.44 in property damage for Chen's car and rental expenses. These amounts are not disputed.
*328 Chen filed suit against Vaughn, seeking damages for personal injury. Her suit did not seek recovery for damage to her car. Vaughn's insurer, Farmers Insurance, eventually settled with Chen for $25,000, the limit of Vaughn's personal injury policy. From this settlement Farmers withheld and put into escrow $5,915.44, the amount of State Farm's PIP payment. Farmers issued Chen a check for the remainder, $19,084.56. Farmers temporarily put $8,873.44 into a separate escrow for Chen's property damage and car rental expenses, but eventually paid that amount directly to State Farm.
Chen then sought further reimbursement from State Farm under her underinsured motorist coverage. State Farm denied the claim. State Farm told Chen that the $19,000 she received from the settlement with Vaughn was fair compensation for her claim, and asked Chen to forward to State Farm the PIP recovery amount.
Chen's underinsured motorist claim went to arbitration. The arbitrator awarded Chen $41,337.91. This award did not include any compensation for property damage.
The arbitration decision, rendered in March 2001, did not say whether State Farm could take an offset from the award for its prior PIP payments. Chen had already taken the position that State Farm was not entitled to be reimbursed either for property damage or PIP unless State Farm agreed to pay some portion of the awards as a share of attorney fees under Mahler v. Szucs, 135 Wash.2d 398, 957 P.2d 632 (1998). State Farm denied any obligation to pay attorney fees. Chen wrote a letter to State Farm on March 23, 2001, asking State Farm to advise her of the course of action State Farm wished her to take to enforce the arbitration decision. She received no answer. On May 9, 2001, Chen obtained an order confirming the arbitration award. But the trial court did not enter a judgment on the award, because the parties still disputed what "setoffs" and "offsets" State Farm could take from the award.[1]
Chen filed suit against State Farm on May 14, 2001, claiming breach of contract, conversion, bad faith, and violations of the Consumer Protection Act. Two weeks later, on May 30, 2001, State Farm tendered a check to Chen for $10,422.47. This amount was the $41,337.91 arbitration amount minus a $25,000 set off for the settlement amount from Farmers and a $5,915.44 offset for State Farm's prior PIP payments.[2] Chen returned State Farm's check because it did not reimburse her for attorney fees, and proceeded with her lawsuit.
Chen requested partial summary judgment on the issue of attorney fees. She contended State Farm owed a pro rata share of her attorney fees incurred to obtain the PIP and property damage payments from Vaughn. She also contended that State Farm had to collect its PIP reimbursement directly from Farmers rather than taking an offset from the arbitration award.
State Farm answered Chen's complaint, counterclaimed, and responded to Chen's summary judgment motion all on the same day.[3] In its response to Chen's summary judgment motion, State Farm asked for a stay in the proceedings pending the outcome of the appeal of Winters v. State Farm Mut. Auto. Ins. Co., 99 Wash.App. 602, 994 P.2d 881 (2000), to the Supreme Court. Winters was expected to address the issue of whether pro rata attorney fees are payable for PIP payments. The trial court denied Chen's motion for summary judgment, and granted the stay pending the outcome in Winters. The court ordered State Farm to pay the disputed amount of attorney fees on the PIP payment into the court registry. Finally, the court found that Chen was entitled to judgment for $10,422.47 on the arbitration award, *329 and that State Farm, upon repayment of this previously rejected amount, was entitled to a satisfaction of the judgment.
On October 4, 2001, the Supreme Court ruled in Winters that when the insured recovers from the tortfeasor and creates a common fund from which the PIP insurer is able to recoup its payments, the insurer is required to pay a pro rata share of the attorney fees associated with the recovery, even though the common fund was created in part by the underinsured motorist policy. Winters, 144 Wash.2d at 881-882, 31 P.3d 1164.
After the Winters decision, State Farm filed a motion to disburse the funds held in the court registry and to satisfy judgment. Chen responded that the court should disburse the funds but withhold entering a satisfaction of judgment until State Farm paid interest from the time that Vaughn's insurer withheld the PIP payment from the settlement. On February 19, 2002, the court entered an order to disburse funds from the court registry to Chen for a total amount of $2,492.79, which represented State Farm's share of attorney fees for the PIP recovery. The court's order stated that this disbursement represented a satisfaction of judgment. The court ordered that there be no payment of interest, as the right to interest had not been established.
Winters resolved the issue of attorney fees for the PIP payment, but other issues from Chen's lawsuit remained; whether State Farm must pay pro rata attorney fees for the property damage recovery, as well as Chen's claims of bad faith and consumer protection violations. State Farm served interrogatories on March 12, 2002. Chen served interrogatories and requests for production on June 12, 2002.
State Farm moved for summary judgment dismissal on June 26, 2002. Because discovery had not yet been completed, Chen requested a continuance of the summary judgment, and asked for an in-camera review of items State Farm withheld as privileged. The court continued the summary judgment hearing until September 12, 2002, but made no provision for a review of the privileged materials.
Chen received State Farm's answers to her interrogatories and requests for production in mid-July. The record is not clear as to when Chen answered State Farm's interrogatories. The discovery process was contentious. State Farm filed two separate motions to compel. Chen filed a motion to strike pleadings, exclude evidence, and order default against State Farm. Chen's motion was noted for hearing without oral argument on September 6, 2002. State Farm filed a response, to which Chen replied, but no ruling was ever made. The trial court heard oral arguments on State Farm's motion, and entered an order granting it on September 27, 2002. Chen appeals. She assigns error both to the grant of State Farm's motion for summary judgment and to the denial of Chen's earlier motion for partial summary judgment.

PROPERTY DAMAGE ATTORNEY FEES
State Farm's position is that it does not owe any attorney fees to Chen for the recovery from Farmers of the amount State Farm paid to Chen for the damage to her car. Chen argues that her efforts created a common fund and thus assisted State Farm's recovery of its property damage subrogation interest. She contends there is a genuine issue of material fact on this issue as shown by correspondence in which a State Farm claims representative provided her with documentation of State Farm's subrogation interests in Farmers' property damage award prior to Chen's settlement with Farmers. Chen had already received the property damage estimates, and she asserts the only reason State Farm would have supplied her with further documentation of its subrogation interest would have been to enable her to collect it.[4]
The trial court, in granting summary judgment, found that State Farm owed no pro rata share of attorney fees for the property damage subrogation recovered from Farmers. The court found Chen's arguments to the contrary to be without merit:

*330 State Farm had a classic subrogation right to recover for property damage under its policy and it directly pursued that right. Plaintiff contends that Mahler applies, however that case is distinguishable from this case because the Mahler decision only addressed recovery under Personal Injury Protection (PIP) coverage. Mahler does not extend to other types of coverage. Another difference between that case and this case is the Mahler insurers did nothing to pursue their rights, other than plaintiff's efforts, until after settlement was reached whereas here, State Farm did pursue its rights prior to the time settlement was reached. Finally, there is a distinction between the type of right the insurer had in that case, and the type of right the insurer had in this case.[[5]]
State Farm's PIP subrogation rights arise from the policy contract between insurer and insured giving the insurer, State Farm, the right to reimbursement from settlement proceeds. The policy treated property damage differently from PIP. State Farm had the right to pursue reimbursement directly from the tortfeasor for amounts paid to the insured under coverage for property damage:
Under all other coverages, the right of recovery of any party we pay passes to us. Such party shall:
(1) not hurt our rights to recover; and
(2) help us get our money back.[[6]]
As the trial court recognized, this was "a classic subrogation right. Because it was a classic subrogation right, the plaintiff assigned her rights to recover to State Farm when she accepted the check for $8373.44 in July 1997 for property damage under her collision policy. Therefore, State Farm had the right to pursue property damages, and further, it did pursue it those rights on its own."[7]
When Chen settled with Farmers, Farmers wrote her stating that both the PIP and property damage amounts would remain in escrow at Chen's request until attorney fees were resolved. This letter does not support Chen's claim that Farmers agreement to pay for the property damage settlement was in some way due to Chen's efforts.
Chen's attorney claimed in deposition that he assisted in the recovery, but he could not recall any specific actions that he took to aid State Farm in recovering its property damage subrogation, other than suing the insured. He claimed that the timing of Farmers payment to State Farm, which occurred after the settlement, was evidence that it occurred through his efforts. But Chen did not seek recovery for property damage when she sued Vaughn. This was also true of her later UIM arbitration, and the arbitration award did not address property damage. The nonmoving party in a summary judgment
may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value; for after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.
Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986).
Chen has not put forward any specific fact to rebut the documented communications between State Farm and Farmers showing that State Farm recovered its subrogated interest in the property damage amount simply by asking Farmers for it. The testimony of Chen's attorney to the contrary is too conclusory to meet her burden on summary judgment. Thus, we agree with the trial court's statement that granting "fees in equity under the common fund doctrine is inappropriate here where the efforts to recover property damage were solely State Farm's efforts."[8]

*331 DISCOVERY
Chen argues that the court abused its discretion in failing to rule on Chen's motion to sanction State Farm for perceived discovery abuses. Before the trial court granted State Farm's motion for summary judgment, Chen asked the court to strike State Farm's answer and exclude State Farm's evidence.
Because Chen's notice of appeal sought review only of the court order granting State Farm's motion for summary judgment, State Farm argues Chen has not preserved any discovery decisions for review. While the court did not explicitly deny Chen's motion to strike State Farm's answer, it did so implicitly by terminating the case in its entirety on summary judgment; the ruling in favor of State Farm would not have been possible if the court had found merit to Chen's motion. Because the discovery issues are implicitly encompassed by the summary judgment ruling, we will address them.
Chen claims that State Farm's answers to six interrogatories were boilerplate and formalistic objections, prohibited by the "spirit of cooperation and forthrightness" required in discovery.[9]
Chen served a set of 42 interrogatories and 31 requests for production on June 12, 2002. State Farm supplied answers one month later on July 12. State Farm produced Chen's claims file, which was redacted in parts for documents that were privileged. State Farm also provided a privilege log for the documents, which gave the date of the document, a general description, and the reason it was withheld. Later, State Farm produced the entire PIP file, and the file of the attorney who represented State Farm in the UIM arbitration. State Farm excluded approximately 30 pages from the attorney's file, and again provided a privilege log for the excluded material.
Chen did not move to compel more complete answers. After the discovery deadline had passed, Chen filed her motion for sanctions for perceived discovery abuses. These included the failure of State Farm to insure the appearance of several former and current State Farm employees at a deposition. Chen requested the following relief: to strike the answer and counter claim of State Farm and enter a default order; to prohibit State Farm from presenting any evidence in support of its answer and counter claim; to grant any other affirmative relief as allowed by CR 37; and to award her $1,500 in attorney fees.
A trial court's decision to impose or not impose discovery sanctions is reviewed for abuse of discretion. The trial court abuses its discretion when the order is manifestly unreasonable or based on untenable grounds. Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wash.2d 299, 338-39, 858 P.2d 1054 (1993). Sanctions are appropriate only when a party fails "to obey an order to provide or permit discovery". CR 37(b)(2). Chen has not identified a discovery order that State Farm failed to obey. Therefore, the trial court did not abuse its discretion in denying Chen the extreme sanctions requested.

BAD FAITH
Chen contends the trial court erred in dismissing on summary judgment her claims of bad faith and consumer protection violations. Her argument rests on her claim that State Farm violated two separate provisions of the Washington Administrative Code by not promptly paying the undisputed UIM arbitration amounts and by not responding to a letter from Chen. Chen's arguments are without merit. The arbitration award was confirmed on May 9, 2001. Once an obligation to pay is established, the insurer must either pay within 15 business days or provide the appropriate release documents within 20 business days. WAC 284-30-330(16). It is undisputed that May 31 was 15 business days after the award was confirmed and that State Farm tendered payment of the undisputed portions of the UIM award on May 30.
The second violation concerns WAC 284-30-360(3), which requires that an insurer must respond within 10 working days to claimant's communications that "reasonably suggest that a response is expected." The letter at issue does not suggest that a response *332 is expected, as Chen's attorney offered not responding as an option.[10] Because Chen failed to raise a genuine issue of material fact as to her claims of bad faith and consumer protection act violations, they were properly dismissed. The trial court addressed all of the above issues in a well reasoned memorandum decision explaining the decision to grant summary judgment. We endorse that decision in full.
Affirmed.
COX, C.J., and KENNEDY, J., concur.
NOTES
[1] A "setoff" refers to sums paid to the insured by another party. An "offset" refers to a credit to which an insurer is entitled for payments made under one coverage against claims made under another coverage within the same policy. Winters v. State Farm Mut. Auto. Ins. Co., 144 Wash.2d 869, 876, 31 P.3d 1164 (2001)
[2] State Farm agreed to let Farmers release to Chen the $5,915.44 being held in escrow.
[3] Apparently because some of the pleadings did not have the correct cause number, several pleadings were not placed in the court file until April 2003. But neither party disputes the timing or sequence of events.
[4] Appellant's Brief at 42.
[5] Clerk's Papers at 1299 (footnotes omitted) (Memorandum Decision).
[6] Clerk's Papers at 247.
[7] Clerk's Papers at 1300 (footnote omitted) (Memorandum Decision)
[8] Clerk's Papers at 1302 (Memorandum Decision)
[9] Appellant's Brief at 21.
[10] The body of the letter reads:

"I ask that you advise me of the course of action you desire this office take regarding the enforcement of the award made by the arbitrator in this matter.
"If I do not hear from you, I will proceed with a motion to confirm the arbitration award."
Clerk's Papers at 34.