[No. 32818-6-II.   Division Two.   November 22, 2005.]

SARITH MEAS, *Appellant*, v. STATE FARM FIRE AND CASUALTY COMPANY, *Respondent*.

528

*Terry J. Barnett* (of *Rumbaugh Rideout Barnett & Adkins*), for appellant.

*Peter A. Danelo, Aneelah Afzali,* and *Kenneth E. Payson* (of *Heller Ehrman, L.L.P.*), for respondent.

¶1 BRIDGEWATER, J. — Sarith Meas appeals the trial court's entry of summary judgment against him. Meas was injured in a motor vehicle accident by a third party and received collision damages under his insurance policy with State Farm Fire and Casualty Company. Meas then sought to recover both property and personal injury damages from the tortfeasor; but State Farm, acting under a provision of Meas's insurance policy involving collision loss, recovered its property damage payment directly from the tortfeasor's insurance company before Meas had settled his personal injury claim.

¶2 We hold that State Farm had a classic subrogation right to recover damages from the tortfeasor's insurer for property damages it paid to Meas; that the contract provi-

sion allowing this recovery has been expressly approved by our Supreme Court; that the subrogation right can be exercised before the issue of personal injury is resolved and is not dependent upon the policyholder being made whole for his personal injury loss; and that Meas was not entitled to a pro rata share of attorney fees attributable to the property damage. We affirm.

## FACTS

¶3 On February 19, 2002, Meas's vehicle was damaged in a collision caused by another driver, Quoc To. Meas was insured by State Farm Fire and Casualty Company. The vehicle Quoc To was driving was insured by Allied Insurance Company.

¶4 Meas's collision coverage provided no-fault coverage for collision-caused damage to his car. His coverage was subject to the following condition ("condition d"):

**3. Our Right to Recover Our Payments**[1]

. . . .

d. Under all other coverages, the right of recovery of any party we pay passes to us. Such party shall:

(1) not hurt our rights to recover; and

(2) help us get our money back.

Our right to recover our payments applies only after the *insured* has been fully compensated for the *bodily injury*, *property damage* or *loss*.

Clerk's Papers (CP) at 156-57.

¶5 On March 13, 2002, Meas informed State Farm by letter that he intended to pursue from Allied "any State Farm subrogation claims, including for medical costs, property damage or other non-medical expenses paid under the

---

[1] The "CONDITIONS" sections 3.a. through 3.c. addressed State Farm's right to recover payments made under its death, dismemberment, loss of sight, medical payments, personal injury protection (PIP), and underinsured motor vehicle coverages. Clerk's Papers (CP) at 156-57. Section 3.d. addressed State Farm's right to recover payments made under all other coverages, including the collision coverage payment at issue in this case.

Meas [sic] first party coverage."[2] CP at 118. On May 1, 2002, State Farm paid Meas's repair costs less a $250.00 deductible, totaling $2,247.73.

¶6 State Farm then requested reimbursement directly from Allied for the collision benefits paid on Meas's behalf. On May 8, 2002, Allied reimbursed State Farm for the full amount of the collision payment, as well as Meas's $250.00 deductible, totaling $2,747.73.[3] State Farm returned the deductible to Meas.

¶7 The following year, on February 26, 2003, Meas sent a settlement proposal to Allied, seeking $6,000.00 in general damages, $2,399.00 in medical bills, and $2,409.03 in property loss. Allied responded that it would settle Meas's personal injury claims but that it had already reimbursed State Farm for his property damage.

¶8 In April 2003, Meas wrote State Farm, demanding that it either return the collision damage payment to Allied or tender the payment to him until his claims against Allied were settled. He argued that State Farm "[did] not have the ability to directly collect Mr. Meas's property loss damages from the tortfeasor, or the tortfeasor's insurance carrier" under *Mahler v. Szucs*, 135 Wn.2d 398, 957 P.2d 632, 966 P.2d 305 (1998). CP at 169-70. State Farm responded that *Mahler* was inapposite to Meas's case; but if Allied's policy limits and Meas's uninsured motorist coverage were insufficient to leave Meas whole, it would give further consideration to his request. Meas did not respond. In December 2003, Meas settled his personal injury claims against Allied for $3,899, within the policy limits.

¶9 Meas filed suit against State Farm on October 10, 2003, alleging that it acted in bad faith and violated the Consumer Protection Act (CPA), chapter 19.86 RCW, in seeking reimbursement for the collision payment directly from Allied after he had notified it that he was pursuing

---

[2] The letter states that Meas intended to pursue his collision damages from Farmers Insurance; however, the record establishes that the car driven by Quoc To was insured by Allied.

[3] The payment also included $250 reimbursement for rental car expenses.

this claim and in refusing to tender the payment to him upon request. He further alleged that State Farm was required to pay a pro rata share of his attorney fees incurred in recovering from Allied. Meas then moved for partial summary judgment, contending that State Farm was liable for conversion, bad faith, and violation of the CPA. State Farm filed a cross-motion for summary judgment on each of Meas's claims.[4] The trial court granted summary judgment in State Farm's favor.

## ANALYSIS

¶10 Meas contends that, as a matter of law, "condition d" of his insurance policy violates public policy on its face and as it was applied to him and, consequently, State Farm was not entitled to seek reimbursement of its collision payment directly from Allied. He further asserts that in recovering directly from Allied, State Farm acted in bad faith, violated the CPA, and committed the tort of conversion. These claims are without merit.

¶11 When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *M.W. v. Dep't of Soc. & Health Servs.*, 149 Wn.2d 589, 595, 70 P.3d 954 (2003). Summary judgment is proper if the pleadings, affidavits, depositions, and admissions on file demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Wood v. Battle Ground Sch. Dist.*, 107 Wn. App. 550, 557, 27 P.3d 1208 (2001). The parties here agree that there are no genuine issues of material fact.

### I. State Farm's Subrogation Right

¶12 Meas argues that "condition d" improperly provided a direct subrogation right to State Farm where he (1) had

---

[4] As to Meas's conversion claim, State Farm argued that he had failed to properly state a cause of action because he failed to include this claim in his complaint. The trial court did not specifically address this issue.

notified State Farm that he was pursuing a property damage claim against Allied and (2) had not been "made whole" for all of his loss, i.e., his personal injury damages. Br. of Appellant at 17. He first contends that under *Mahler*, 135 Wn.2d 398, an insurer has no right of direct subrogation where its insured has chosen to pursue third-party recovery for him- or herself. Meas's argument ignores the clear and unambiguous terms of his insurance contract and misconstrues *Mahler.*

¶13 Subrogation is an equitable doctrine, the purpose of which is to provide for a proper allocation of payment responsibility. *Mahler*, 135 Wn.2d at 411. It seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, should bear it. *Mahler*, 135 Wn.2d at 411. Subrogation has two features: the right to reimbursement and the mechanism for the enforcement of that right. The right to reimbursement may arise by operation of law, termed "legal" or "equitable" subrogation, or by contract, called "conventional" subrogation. *Mahler*, 135 Wn.2d at 412. Here, State Farm's right of subrogation for its collision payment arose from Meas's insurance policy.

¶14 "The more troublesome question is the precise enforcement mechanism for the [insurer's] right of reimbursement." *Mahler*, 135 Wn.2d at 412. The right of reimbursement may be enforced as a lien against any recovery the insured secures against a third party; alternatively, the insurer, standing in the shoes of the insured, may pursue an action against the third party. *Mahler*, 135 Wn.2d at 413. Here, "condition d" provided that, upon receipt of payment from State Farm, Meas's right of recovery passed to State Farm. Additionally, State Farm's right to recover applied only after Meas was fully compensated for his bodily injury, property damage, or other loss.

¶15 Traditionally, subrogation concerned cases of marine and fire loss, wherein the insurer would be subrogated to the extent of its payment to the insured against the party

responsible for the loss. *Mahler*, 135 Wn.2d at 413. "Property loss subrogation caused few disputes between the insurer and the insured, because *once the insured had recovered from the insurer the economic value of the loss, the insured had little or no interest in competing with the insurer for the right to sue the tortfeasor; economic damages could make the insured whole.*" *Mahler*, 135 Wn.2d at 413 (emphasis added).

■ ¶16 In contrast to the present case, which addresses collision coverage, *Mahler* addressed an insurer's right to subrogation for personal injury payments under a personal injury protection (PIP) provision. *Mahler*, 135 Wn.2d at 404. The court noted that "[i]n the personal injury context, where insureds may wish to pursue claims for noneconomic damages, i.e., pain and suffering, disputes regarding the right to subrogation have proliferated." *Mahler*, 135 Wn.2d at 414. It went on:

> *By contrast with a property loss case, where the damages are all economic and usually readily determinable, so that the insured can be made whole by the payment of money*, in a personal injury case, the claimed noneconomic damages typically amount to many multiples of the economic damages and are almost always disputed because they are not objectively ascertainable. Thus, rather than stepping aside and allowing the insurer to pursue the tortfeasor by means of subrogation for the money it paid its insured, the injured insured will often sue the tortfeasor to recover noneconomic damages, and include in the claim the medical expenses and other special damages he or she has incurred as a result of the injury. In effect, the injured insured does not abandon its shoes, and its insurer thus has no shoes to step into to pursue subrogation.

*Mahler*, 135 Wn.2d at 414 (emphasis added). Thus, the *Mahler* court recognized that an insurer may either recover directly from the third party responsible for the loss or through a lien against any recovery the insured secures against the third party; generally, the former avenue is pursued where property damage is at issue.

¶17 The court analyzed the insurer's right to recover under the insured's PIP provision. *Mahler*, 135 Wn.2d at 404. The provision at issue stated:

> b. Under personal injury protection and underinsured motor vehicle coverages, we are subrogated to the extent of our payments to the proceeds of any settlement the injured person recovers from any party liable for the bodily injury or property damage.

*Mahler*, 135 Wn.2d at 418. In addition, "paragraph c" of the policy contained a provision identical to "condition d" in Meas's insurance contract: "c. Under all other coverages the right of recovery of any party we pay passes to us." *Mahler*, 135 Wn.2d at 418.

¶18 The court held that under "paragraph b" of the policy, the insurer's contractual right to recover its PIP payments arose only after the insureds settled their bodily injury claims against the tortfeasor. *Mahler*, 135 Wn.2d at 419. The court reasoned that the contract language "plainly [did] not contemplate State Farm [would] step into the shoes of its insureds" and that paragraph "b" " 'creat[ed] a right in the proceeds, not against the tortfeasor.' " *Mahler*, 135 Wn.2d at 419, 420 (quoting *State Farm Mut. Auto. Ins. Co. v. Pohl*, 255 Or. 46, 464 P.2d 321, 324 (1970)). And then it noted,

> By contrast, in . . . Paragraph c, State Farm contracted with its insureds for a traditional subrogation right to recover payments made to its insureds. . . . [This paragraph] succinctly creates a subrogation right. . . . This assignment of rights is a proper, classical subrogation clause.

*Mahler*, 135 Wn.2d at 420-21 (emphasis added).

¶19 Contrary to Meas's assertion, the *Mahler* court did not proclaim a general "public policy" that a "first-party insured must abandon his third-party claim before his insurer has any right to *subrogation*." Br. of Appellant at 26. Rather, it analyzed *specific PIP policy language* and concluded that the insured's *policy* created only a contractual right of reimbursement, not a right to subrogation, where the insured pursues an action against a third party. *Mahler*, 135 Wn.2d at 421. And to illustrate its point, the court

contrasted the PIP policy language with a separate recovery provision, identical to the provision at issue in this case, granting the insurer a traditional subrogation right. *Mahler*, 135 Wn.2d at 420-21. Moreover, the court approved of the provision, stating that the assignment of the insured's rights against a third party was a "proper, classical subrogation clause." *Mahler*, 135 Wn.2d at 421. "Condition d" here did no more than what the *Mahler* court expressly authorized.

¶20 A recent Division One case, *Chen v. State Farm Mutual Automobile Insurance Co.*, 123 Wn. App. 150, 94 P.3d 326 (2004), *review denied*, 153 Wn.2d 1024 (2005), is instructive. *Chen* similarly involved a collision damage recovery provision identical to "condition d" in this case. *Chen*, 123 Wn. App. at 157. The insured was injured in a car accident and received both PIP and property damage benefits from the insurer. *Chen*, 123 Wn. App. at 152. The insured then filed suit against the tortfeasor, seeking only damages for personal injury. *Chen*, 123 Wn. App. at 152. The insured settled with the tortfeasor and the insurer was reimbursed for its PIP payment; however, the insurer recovered its property damage payment directly from the tortfeasor. *Chen*, 123 Wn. App. at 152.

¶21 In analyzing the insurer's right to recover, the court stated:

> State Farm's PIP subrogation rights arise from the policy contract between insurer and insured giving the insurer, State Farm, the right to reimbursement from settlement proceeds. *The policy treated property damage differently from PIP. State Farm had the right to pursue reimbursement directly from the tortfeasor for amounts paid to the insured under coverage for property damage*:
>
> . . . .
>
> . . . . Because it was a classic subrogation right, the plaintiff assigned her rights to recover to State Farm when she accepted the check . . . for property damage under her collision policy. Therefore, State Farm had the right to pursue property damages, and further, it did pursue it [sic] those rights on its own.

*Chen*, 123 Wn. App. at 157 (emphasis added).

¶22 Nevertheless, Meas argues that *Chen* is distinguishable because, unlike Meas, the plaintiff in *Chen* did not seek to recover property damage from the tortfeasor and, thus, "*abandoned*" her property claim. Br. of Appellant at 31. But this factual distinction did not influence the court's legal analysis of State Farm's right to recover under *Mahler*. It held as a matter of law that State Farm's payment for collision damage, and the insured's acceptance of that payment, triggered the assignment of the insured's right to recover for property damage to State Farm under the policy's express language. *Chen*, 123 Wn. App. at 157. Thus, as State Farm here aptly notes, "the relevant question [under 'condition d'] is not whether the insured seeks or abandons his or her claim for damages . . . but whether assignment of the recovery right has been triggered." Br. of Resp't at 29. We adopt the reasoning of *Mahler* and *Chen* and hold that "condition d" properly granted State Farm the right to recover its collision payments directly from Allied.[5]

¶23 Meas next contends that under *Thiringer v. American Motors Insurance Co.*, 91 Wn.2d 215, 588 P.2d 191 (1978), an insurer has no right of recovery before its insured has been fully compensated for all of his or her damages. While Meas correctly states the law, he misinterprets the language in *Thiringer*.

¶24 Like *Mahler*, *Thiringer* involved a PIP policy provision.[6] *Thiringer*, 91 Wn.2d at 216. At issue was the proper allocation of the proceeds of a settlement between the insured and the tortfeasor where the insured's general

---

[5] Meas also argues that "condition d" created "practical problems" by splitting his cause of action against Allied. Br. of Appellant at 17 n.41. This claim is without merit as State Farm did not initiate a lawsuit against Allied. *See Babcock v. State*, 112 Wn.2d 83, 93, 768 P.2d 481 (1989) (the doctrine of claim preclusion prohibits claim splitting as a matter of policy, primarily to conserve judicial resources and to ensure repose for parties who have already responded adequately to the plaintiff's claims; the key inquiry is whether the *second suit* presents the same claim as the first).

[6] Likewise, the PIP policy contained a provision permitting the insured to pursue his or her damages against a third party and subsequently reimburse its insurer. *Thiringer*, 91 Wn.2d at 219.

damages exceeded the limit of the tortfeasor's liability insurance. *Thiringer*, 91 Wn.2d at 217, 219. The insurer argued that the proceeds should be allocated first to the special damages covered by the insured's PIP provision or, at the very least, prorated between the general and PIP damages. *Thiringer*, 91 Wn.2d at 219. The court rejected this contention, stating, "[t]he general rule is that, while an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tort-feasor . . . it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss." *Thiringer*, 91 Wn.2d at 219. *Mahler* relies upon the same general rule. *Mahler*, 135 Wn.2d at 417. The *Thiringer* court held that the insured was entitled to be "made whole" and that where an insurance policy is silent on the matter, the insured may recoup his or her general damages from settlement proceeds before allowing subrogation. *Thiringer*, 91 Wn.2d at 220, 222. Accordingly, Meas argues that State Farm was not entitled to recover its collision payment from Allied until he was fully compensated for all of his loss, including personal injury.

¶25 Meas is correct in that *Mahler* and *Thiringer* implicate the insured's right of compensation for all of his or her loss caused by a third party. But the court in *Thiringer* stated that an insurer is entitled to reimbursement where its insured recovers payment for the *same loss* from a third party. *Thiringer*, 91 Wn.2d at 219. The meaning is plain that for *property damage* where there is classic subrogation, the insured is to be made whole for the same loss, i.e., the *property damage*, before the carrier can recover payment from the tortfeasor. But the property damage subrogation does not relate to the right of reimbursement for personal injuries under the policy language.

¶26 Here, Meas was fully compensated or "made whole" for the property loss claimed under his collision coverage when he received payment from State Farm. Further, State Farm recovered his deductible and paid it to him. Under the

express language of the policy and in accordance with *Mahler* and *Thiringer*, State Farm was entitled to directly recover its payment from Allied. And, as the subrogated property damage claim was distinctly different and separate from the personal injury, State Farm could settle the matter at any time, even prior to the settlement of the personal injury. Meas's personal injury claim was solely between Allied and himself and did not involve State Farm.

## II. Equitable Sharing

¶27 In addition, Meas contends that "condition d" violates public policy because it "nullif[ied] [State Farm's] *Mahler* duty to bear part of Meas's attorney fee [sic] and costs." Br. of Appellant at 26. He argues that if State Farm had not improperly "interfered" with his property claim against Allied, he would have been entitled to a proportionate share of his attorney fees and costs pursuant to the "common fund" doctrine for his assistance in State Farm's recovery of its property damage subrogation interest. Br. of Appellant at 9. This claim is entirely without merit.

¶28 After determining that the insurer had a right to reimbursement only after the insured settled its bodily injury claim against the tortfeasor, the *Mahler* court analyzed paragraph d of the insured's policy, which stated:

> d. If the insured recovers from the party at fault and we share in the recovery, we will pay our share of the legal expenses. . . . This does not apply to any amounts recovered or recoverable by us from any other insurer under any inter-insurer arbitration agreement.

*Mahler*, 135 Wn.2d at 419.

¶29 The court concluded that, under the policy, the insurer was entitled to reimbursement from the insured for its PIP payment only after it paid a pro rata share of the insured's attorney fees and litigation costs. *Mahler*, 135 Wn.2d at 424-25. It further noted, "[t]his equitable sharing rule is based on the common fund doctrine, which, as an exception to the American Rule on fees in civil cases,

applies to cases where litigants preserve or create a common fund for the benefit of others as well as themselves." *Mahler*, 135 Wn.2d at 426-27 (citing *Covell v. City of Seattle*, 127 Wn.2d 874, 891, 905 P.2d 324 (1995)). However, the court declined to find that the equitable rule of pro rata sharing may not be varied by contract. *Mahler*, 135 Wn.2d at 425 n.16.

¶30  The equitable sharing rule is inapplicable to the case at bar as it applies only where an insurer is reimbursed through a lien against the recovery its insured secures from a third party. Here, not only did State Farm properly recover its collision payment directly from Allied, its actions benefited *Meas* by alleviating the need to recover his deductible from Allied. State Farm properly recovered its own subrogated interest in the property damage amount. We agree with the *Chen* court's conclusion that granting fees under the common fund doctrine is inappropriate where the efforts were solely those of State Farm.

¶31  In sum, "condition d" is a valid subrogation clause, which properly follows the subrogation principles propounded in *Mahler* and *Thiringer* and their progeny; consequently, we need not address Meas's CPA, bad faith, and conversion claims or his claim for attorney fees. Summary judgment was properly granted for State Farm.

¶32  Affirmed.

QUINN-BRINTNALL, C.J., and HUNT, J., concur.

Review denied at 157 Wn.2d 1018 (2006).