[No. 62828-3-I.    Division One.    August 17, 2009.]

S&K MOTORS, INC., *Appellant*, v. HARCO NATIONAL INSURANCE COMPANY, *Respondent*.

*Franklin D. Cordell* and *Pamela Jo DeVet* (of *Gordon Tilden Thomas & Cordell, LLP*), for appellant.

*Robert C. Levin* (of *Wilson Smith Cochran Dickerson*), for respondent.

¶1 LEACH, J. — S&K Motors, Inc., d/b/a Pinnacle Mazda, appeals orders denying its motion for partial summary judgment and granting summary judgment to Harco National Insurance Company. Because an insured must be fully compensated for its loss before the insurer can benefit from any third-party recovery collected by the insured, we reverse and remand with instructions for the trial court to grant summary judgment to Pinnacle.

## Background

¶2 Pinnacle Mazda is a car dealership in Renton. In February 2007, Pinnacle discovered that one of its employees, Stephen Casino, had been stealing from the dealership for about three months. As finance manager, Casino had access to and handled cash, including customer down payments. Casino had converted cash to his own use rather than delivering it to the accounting department or depositing it in the company safe. Pinnacle confronted Casino about the thefts on February 8, 2007.

¶3 Casino confessed that on seven occasions he had stolen amounts ranging from $1,300 to $5,000, for a total of

$21,590. He admitted that he had a gambling addiction and begged to keep his job. Based on Casino's promise to repay and not steal again, Pinnacle kept him as its employee. Casino entered a written agreement with Pinnacle authorizing Pinnacle to deduct all available funds from his paycheck until his debt was paid in full. Casino also agreed to handle all future cash transactions in the presence of another employee.

¶4 However, it soon became clear that Casino had misled Pinnacle. Casino had failed to disclose two instances of theft to Pinnacle. Before entering the agreement, he had actually stolen, on nine rather than seven occasions, a total of $27,590. In addition, Casino continued to steal from Pinnacle after entering the agreement. Even after Pinnacle discovered Casino's persisting dishonesty, it entered a second agreement with him in which he made the same promise to repay and to stop stealing. The second agreement listed the newly discovered thefts that had taken place before and after the first agreement. Casino continued to steal after the second agreement. Pinnacle terminated Casino's employment on May 1, 2007. Between February 8, 2007, when Pinnacle first discovered the theft, and May 1, 2007, when it fired Casino, Pinnacle recovered $26,561 through deductions from Casino's pay. During that same time, Casino stole an additional $44,715. Pinnacle's total loss from Casino's thefts before and after discovery was $72,305. Pinnacle reported the theft to the Renton Police Department on May 4, 2007.

¶5 Harco insured Pinnacle through a policy issued to its parent corporation, Sound Ford, Inc., having a stated policy period from September 1, 2006, to September 1, 2007. The parties agree that all of Casino's thefts occurred during this policy period. On May 9, 2007, Pinnacle submitted a claim to Harco for loss due to employee theft. The policy provides employee theft coverage with a limit of $250,000 per occurrence and a $5,000 deductible. The "COMMERCIAL CRIME COVERAGE FORM" provides:

A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition E.1.k. or E.1.l., which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition E.1.g.:

1. Employee Theft

We will pay for loss of or damage to "money," "securities" and "other property" resulting directly from "theft" committed by an "employee," whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

For purposes of this provision, the term "occurrence" is defined in the policy as

(1) An individual act;

(2) The combined total of all separate acts whether or not related; or

(3) A series of acts whether or not related

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition E.1.k. or E.1.l.

A policy condition specifies that employee theft coverage "terminates as to any 'employee' . . . [a]s soon as . . . [y]ou . . . learn of the 'theft' or any other dishonest act committed by the 'employee' whether before or after becoming employed by you."

¶6 Harco denied Pinnacle's claim, stating that the amount Pinnacle recovered from Casino exceeded the amount of the covered claim. Harco relied upon a recoveries condition in its policy that was not in force at the time of the denial. An endorsement labeled "Washington Changes" replaced this condition with one entitling Harco to a third-party recovery only after its insured had been fully compensated for its loss.

¶7 Pinnacle sued Harco for breach of contract, violation of the insurance fair conduct act, RCW 48.30.015; bad faith; and violation of the Consumer Protection Act, chapter 19.86 RCW. The parties brought cross motions for summary judgment regarding Harco's obligation to pay Pinnacle's claim. Pinnacle's motion requested summary judgment on the breach of contract claim, arguing that by denying the claim, Harco breached its insuring agreement as a matter of law because the policy and Washington law require that the insured be fully compensated for its loss before the insurer can benefit from a third-party recovery. Harco opposed this motion on a different basis than it denied Pinnacle's claim, arguing that Pinnacle suffered two distinct losses: one loss before discovery of the theft and a second loss after discovery. It argued that the amount recovered from Casino applied only to the first loss and that Pinnacle would enjoy a double recovery if Harco paid the claim. The trial court granted Harco's motion for summary judgment and denied Pinnacle's partial motion for summary judgment.

## Standard of Review

¶8 The court of appeals reviews summary judgment orders de novo, engaging in the same inquiry as the trial court.[1] Interpretation of an insurance policy is a question of law reviewed de novo.[2]

## Discussion

¶9 Pinnacle appeals from the trial court's order denying its summary judgment motion. Pinnacle did not designate in its notice of appeal the contemporaneous, final appealable order granting Harco's motion for summary judgment, although it clearly argues that the motion was granted in error. RAP 5.3(f) states that the court "will

---

[1] *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007).

[2] *Woo*, 161 Wn.2d at 52.

disregard defects in the form of a notice of appeal . . . if the notice clearly reflects an intent by a party to seek review." Here, the notice clearly reflects Pinnacle's intent to seek review of the issues decided in the order granting summary judgment to Harco, although Pinnacle failed to designate that order in its notice of appeal. This court has discretion to review the denial of a motion for summary judgment where there are no genuine issues of material fact.[3] Because the orders dispose of the same legal issues, we exercise our discretion to review both orders.

¶10 Harco argues that the amount Pinnacle recovered from Casino exceeded the covered loss and fully compensated Pinnacle for its loss. Pinnacle does not dispute that the policy does not cover the portion of its loss sustained after it discovered the theft but disputes Harco's contention that the covered portion of its loss is a separate "loss" under the policy. We agree that Pinnacle sustained only one "loss" from one "occurrence" and has not been fully compensated for its loss.

¶11 Courts construe insurance policies as a whole, giving them " 'a fair, reasonable, and sensible construction.' "[4] Insurance policies are construed liberally, in order to provide coverage whenever possible.[5] Terms that are defined within a policy should be interpreted in accordance with the policy definition.[6] An undefined term is interpreted according to its ordinary meaning, unless there is a legal,

---

[3] *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 329, 2 P.3d 1029 (2000) ("Although there is no appeal as of right from the denial of a motion for summary judgment, we may exercise our discretion and rule on a denied motion for summary judgment to serve the interest of judicial economy where there are no genuine issues of material fact.").

[4] *Bordeaux, Inc. v. Am. Safety Ins. Co.*, 145 Wn. App. 687, 693, 186 P.3d 1188 (2008) (quoting *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 575, 964 P.2d 1173 (1998)).

[5] *Bordeaux*, 145 Wn. App. at 694.

[6] *Allstate*, 136 Wn.2d at 576.

technical meaning that both parties clearly intended to apply.[7] Ambiguities are construed in favor of the insured.[8]

¶12 The policy expressly provides that Pinnacle is entitled to be fully compensated for its loss:

> Any recovery or salvage on a loss will accrue entirely to our benefit until the sum paid by us has been made up. But, we will be entitled to any other recovery only after you have been fully compensated for the loss.

In addition, the general rule in Washington is that an insured is entitled to be fully compensated for its loss.

> [W]hile an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tort-feasor responsible for the damage, it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss.[9]

¶13 Harco argues that Pinnacle had not suffered a compensable loss at the time it submitted its claim to Harco because Pinnacle had already recovered the covered amount Casino had stolen prior to February 8, 2007. Because both Harco and Pinnacle assume that each "occurrence" produces a single "loss," the viability of this argument depends on Harco's construction and application of the policy term "occurrence." According to Harco, an occurrence ends when coverage for that occurrence under its policy ends.

¶14 Harco reasons that because the term "occurrence" applies under Insuring Agreement A.1., the employee theft coverage provision, and this coverage "terminates as to any 'employee' . . . [a]s soon as . . . [y]ou . . . learn of the 'theft' or any other dishonest act committed by the 'employee' whether before or after becoming employed by you," an "occurrence" cannot include acts that take place after the

---

[7] *Allstate*, 136 Wn.2d at 576.

[8] *Bordeaux*, 145 Wn. App. at 694 (citing *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456-57, 760 P.2d 337 (1988)).

[9] *Thiringer v. Am. Motors Ins. Co.*, 91 Wn.2d 215, 219, 588 P.2d 191 (1978).

discovery of the employee's theft. In other words, Harco argues that the termination provision changes the policy definition of "occurrence" to mean that an "occurrence" of employee theft ends when coverage for that employee terminates. But Harco concedes that the policy definition of "occurrence" is unambiguous and includes "[t]he combined total of all separate acts whether or not related . . . committed by an 'employee' . . . during the Policy Period shown in the Declarations . . . ." Therefore, all of Casino's separate acts of theft during the policy period constitute a single occurrence. Although coverage terminates as to a dishonest employee upon the insured's discovery of the theft, no words in the unambiguous definition or elsewhere in the policy provide that this end to coverage also ends an "occurrence."

¶15 Harco argues that interpreting the policy term "occurrence" to mean that all Casino's thefts constitute one "occurrence" renders the termination provision meaningless because this interpretation requires Harco to pay Pinnacle's claim for the prediscovery portion of its loss. This in turn diminishes the economic loss to Pinnacle caused by the postdiscovery thefts because Pinnacle is allowed to apply its recovery from Casino to these thefts. Harco views this result as providing the economic equivalent of coverage for the postdiscovery thefts and therefore wrong.

¶16 Harco's argument assumes a relationship between coverage and its right to reimbursement that does not exist. The question of coverage concerns whether an insurer contracted to pay a particular loss. The question of reimbursement concerns only whether an insured has been fully compensated for its loss.[10] This inquiry does not depend upon whether the loss is fully or only partially insured.[11]

---

[10] *Sherry v. Fin. Indem. Co.*, 160 Wn.2d 611, 621-22, 160 P.3d 31 (2007).

[11] *Sherry*, 160 Wn.2d at 625.

Neither does it depend upon whether the insured itself was the cause of some part of the loss.[12]

¶17 In *Sherry v. Financial Indemnity Co.*,[13] Sherry suffered total damages of $143,127.92 when an uninsured motorist struck him. An arbitrator found Sherry was 70 percent at fault and entitled to recover only $42,938.38 from the motorist.[14] Financial Indemnity Company (FIC) provided Sherry with underinsured motorist insurance. FIC claimed that it was entitled to offset the amount of personal injury protection payments it previously paid Sherry against the $42,938.38, reasoning that Sherry was fully compensated when he had recovered $42,938.38, that part of his damages not caused by his own fault. The court rejected FIC's argument, holding that an insurer is entitled to reimbursement only when the insured is fully compensated for its actual damages, "without reduction to account for the insureds' fault."[15] Thus, the amount required to fully compensate an insured for its loss is not diminished by any part of the loss not covered by insurance or any part of the loss caused by the fault of the insured.

¶18 The policy recovery provision states that Harco "will be entitled to any other recovery only after you have been fully compensated for the loss." Under *Sherry*, Pinnacle is not fully compensated for its loss until it recovers the full amount taken by Casino. The amount of full compensation due Pinnacle is not diminished by the lack of insurance coverage for part of its loss.

¶19 Although the termination provision does not affect what constitutes a "loss" or an "occurrence" under the policy, it does operate to terminate coverage for further theft by Casino. As a result, that portion of the loss Pinnacle

---

[12] *Sherry*, 160 Wn.2d at 625.

[13] 160 Wn.2d 611, 615, 160 P.3d 31 (2007).

[14] *Sherry*, 160 Wn.2d at 615.

[15] *Sherry*, 160 Wn.2d at 625.

incurred after it discovered the theft is not covered by the policy and the termination provision is not meaningless. It limits coverage to the portion of the loss incurred prior to discovery.

¶20 Harco also argues that "the obvious intent of the termination provision in the Harco policy is to shift the risk of theft back to an insured employer when that employer elects to continue employing a worker whom they know is stealing." We agree, and Pinnacle admits, that Harco bears none of the risk of paying for loss incurred after Pinnacle discovered Casino's thefts. But interpreting the policy term "occurrence" to encompass all of Casino's acts of theft does not thwart the policy's intent to shift the risk of loss to the insured after employee theft is discovered. The amount Harco is required to pay under the policy now is the same as what it would have paid if Pinnacle had fired Casino on the spot and immediately reported its loss to Harco.

¶21 Harco also argues that Pinnacle's claim is barred under *Meas v. State Farm Fire & Casualty Co.*[16] Meas was injured in a car accident and made a property damage claim under his own insurance.[17] The insurer, State Farm, paid the claim.[18] After paying the property loss, State Farm sought reimbursement from the tortfeasor's insurer.[19] The tortfeasor's insurer then agreed to settle Meas's personal injury claims but refused to pay Meas for property damages because it already had reimbursed State Farm for his property damage.[20] After settling his personal injury claim, Meas sued State Farm, arguing that State Farm did not have the right to seek subrogation from the tortfeasor's insurer because Meas had not yet been fully compensated for his loss caused by the accident because he had not been

---

[16] 130 Wn. App. 527, 123 P.3d 519 (2005).

[17] *Meas*, 130 Wn. App. at 530.

[18] *Meas*, 130 Wn. App. at 531.

[19] *Meas*, 130 Wn. App. at 531.

[20] *Meas*, 130 Wn. App. at 531.

compensated for his personal injury loss.[21] The Court of Appeals affirmed summary judgment in favor of State Farm because Meas had been fully compensated for his property damage when he received payment from State Farm.[22] The court held that "the subrogated property damage claim was distinctly different and separate from the personal injury. . . ."[23] Motor vehicle liability policies typically provide separate coverage for bodily injury or death and property damage, a circumstance recognized by our legislature in defining minimum liability insurance requirements.[24] Here, however, there is no distinct and separate loss under the policy. Under the plain language of the policy, Pinnacle incurred a single loss.

¶22 Harco makes much of the fact that Casino agreed to repay funds that he stole prior to February 8, 2007, and that Pinnacle recovered funds from Casino, ostensibly to repay the debt he incurred prior to February 8, 2007. Harco argues that these funds must be marshaled to repay the prediscovery thefts only and may not be applied to the portion of Pinnacle's loss incurred after it discovered Casino's theft. However, during the period Pinnacle believed the agreement was in effect, Pinnacle collected $26,561 from Casino while he stole $44,715. Thus, Pinnacle in fact made no net recovery during the period Harco describes as the second "occurrence" but incurred a net loss of $18,154. In addition, Harco does not explain why Casino would be able to enforce any implied marshaling term in the agreement when Casino breached the agreement by continuing to steal. Most significantly, Harco does not explain why a marshaling term that it implies in an agreement between Casino and Pinnacle would supersede the express reimbursement provision in Harco's insurance contract. Pinnacle incurred a single loss based on a single "occurrence"

---

[21] *Meas*, 130 Wn. App. at 531-32.

[22] *Meas*, 130 Wn. App. at 538-39.

[23] *Meas*, 130 Wn. App. at 539.

[24] *See* RCW 46.30.020; RCW 46.29.090.

and has not been fully compensated for that loss. Thus, Harco is not entitled to reimbursement under the express language of its policy and may not benefit from Pinnacle's third-party recovery of a portion of its loss.

¶23 In opposition to Pinnacle's motion for summary judgment, Harco argued that it was prejudiced by late notice of Pinnacle's loss. However, Harco must perform under its insurance contract unless it can show actual and substantial prejudice due to the late notice.[25] Harco presented no evidence of prejudice in response to Pinnacle's motion. We therefore hold that Harco failed to raise an issue of fact about any prejudice from Pinnacle's late notice.

¶24 Pinnacle requests reasonable attorney fees under *Olympic Steamship Co. v. Centennial Insurance Co.*[26] *Olympic Steamship* provides that "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees . . . ."[27] Harco apparently concedes that Pinnacle is entitled to fees if it prevails because it did not present any contrary argument. We grant Pinnacle's request for reasonable attorney fees.

## Conclusion

¶25 We reverse the trial court's orders granting summary judgment to Harco and denying summary judgment to Pinnacle, and remand for entry of summary judgment in favor of Pinnacle on its breach of contract claim. We award reasonable attorney fees to Pinnacle, the amount of which shall be determined by the trial court after remand.[28]

¶26 Reversed and remanded.

DWYER, A.C.J., and APPELWICK, J., concur.

---

[25] *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 417, 191 P.3d 866 (2008).

[26] 117 Wn.2d 37, 811 P.2d 673 (1991).

[27] *Olympic S.S.*, 117 Wn.2d at 54.

[28] RAP 18.1(i).